PEARL BROWN v. AETNA CASUALTY & SURETY COMPANY ET AL.

No. 7539. Decided December 4, 1940.
Rehearing overruled January 8, 1941.
(145 S. W., 2d Series, 171.)

584

*Morris Pepper, J. A. Collier* and *James A. Copeland,* all of Houston, for plaintiff in error.

The Court of Civil Appeals erred in holding that Adolphus Brown came to his death while performing maritime service to a completed vessel which was capable of self-propulsion and was afloat in the navigable waters of the United States, notwithstanding no issue on the disputed fact of the navigability of the waters, at the time of his death, had been requested to be submitted to the jury by the insurance company upon whom rested the burden of establishing that issue. Jones v. Johnson, 25 S. W. 650; Ormsby v. Ratcliffe, 117 Texas 242, 1 S. W. (2d) 1084; Colbert v. Dallas Jt. Stock Land Bk., 129 Texas 235, 102 S. W. (2d) 1031.

*Fulbright, Crooker & Freeman,* of Houston, for defendant in error, Aetna Casualty & Surety Company, *Burris & Benton,* both of Houston, for defendants in error, Mary Jones and Crawford Brown.

When deceased was upon the water doing maritime duties at the time of his death, the right to recover for his death must be determined by maritime law even though the major portion of his work was upon land. Northern Coal & Dock Co. v. Strand, 278 U. S. 142, 73 L. Ed. 232; Union Oil Co. v. Pillsbury, 63 Fed. (2d) 925; The Plymouth, 3 Wall. 20, 18 L. Ed. 125.

*Bracewell & Spiner,* of Houston, filed briefs for intervenor Sylvia Robinson.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was filed in the trial court in the form of an appeal by the compensation insurance carrier, Aetna Casualty & Surety Company, from an order of the Industrial Accident Board awarding plaintiff in error, Pearl Brown, compensation for the death of Adolphus Brown, her husband, and the controlling question here is whether or not the case is cognizable exclusively by a court of admiralty of the United States. The case was submitted to a jury upon special issues, all of which were answered in accordance with the contentions of plaintiff

in error. It was stipulated by the parties before the evidence was introduced that the question of jurisdiction might be taken up and decided along with the merits of the case. The case thereupon proceeded to trial on its merits, and after verdict was returned the surety company filed its motion to dismiss the cause and set aside the award of the Industrial Accident Board on the ground that any claim for Adolphus Brown's death came "under the exclusive jurisdiction of the Courts of the United States or of the state courts applying only the admiralty or common law, and precluding the application of the Workmen's Compensation Act of the State of Texas to such claim." Subject to the foregoing it filed a motion for judgment in its favor non obstante veredicto. Subject to both of the foregoing motions it filed its motion that the court disregard the jury's findings in answer to certain named special issues and enter judgment, after disregarding such findings, in its favor. Upon hearing of the motion to dismiss for want of jurisdiction same was granted and the cause was dismissed. The other motions were therefore not reached. The trial court's judgment was affirmed by the Court of Civil Appeals. 122 S. W. (2d) 261.

The facts material to the question under review are few. Adolphus Brown was employed by Shippers Compress Company. He was used as a utility man to do anything he was called upon to do about the compress. The president of the compress company owned a yacht, "Sarnette," sixteen tons gross, eleven tons net, forty-six feet long, and twelve feet wide which drew four feet and five inches of water. It was licensed by the United States government to proceed from port to port of the United States and was used to go out into the Gulf during the summer months. While the yacht was owned by the president of the compress company, it was used largely to entertain customers and prospective customers of the company. The company paid a part at least of the operating expenses thereof. In September, 1935 the yacht was brought up Buffalo Bayou and tied up for the winter at the compress company's docks on the bayou. In December thereafter there occurred an unprecedented flood in Houston. We take the following statement from the opinion of the Court of Civil Appeals, which was copied from one of the briefs filed in that court:

"* * * The swift water caused the boat lines to chafe and cut in two, and the boat broke loose on Sunday morning (December 8, 1935). It started down the bayou, but men from the compress jumped in their cars and went down to the 'Saap'

bridge and caught the boat as it came under the bridge, which was about one-fourth of a mile from the Shippers Compress. The boat was tied downstream from the bridge by two lines on shore to telephone posts, one line to a tree and one line to the bridge, all of which were fixed to the bow of the boat. The lines were so attached and arranged as to permit the boat to be moved and its position maintained in the middle of the bayou. There was a small line on the boat that could be tightened to pull it away from the bank. They intended to leave the boat tied to the bridge until the water went down, when it was to be brought back to the docks. On Monday, December 9, 1935, at about 5:00 or 5:30 o'clock p. m., Thomas Stewart took Charlie Chandler and Adolphus Brown, the deceased, down to where the boat was tied at the 'Saap' bridge. Mr. Armstrong, the boss, had given Charlie and Adolphus orders to go down and watch the boat. According to Stewart, the deceased had been a utility man at the compress, and apparently had not worked on this boat before. He principally loaded cotton on drays. Adolphus Brown, the deceased, was to stay on the boat and Charlie on the land, and they were to manipulate the lines to keep the boat out in the middle, or channel, so that it would not ground when the tide went out or the water went down. When they went there at 5:00 o'clock, Adolphus, as was his duty, got on the boat and Charlie stayed on shore. One of them had to be on shore, and the other had to be on the boat. About 1:00 o'clock that night the accident happened. The tide went out and the boat grounded. Adolphus was on the boat. He said 'We have got to let slack on the rope to get it off the land.' Charlie loosened the lines. Adolphus was to hold the boat by a rope and keep it from going too far in the channel. He was to manipulate the lines from the boat. The boat straightened out in the channel and that was the last that Charlie saw of Adolphus. They searched for him. His body was found in May, 1936."

■ The question presented appears to have been settled contrary to the holding of the courts below. In a copius note in 25 A. L. R. the rule is deduced from the authorities at page 1035 that:

"Where the injured person was employed under a nonmaritime contract, state compensation acts, whether compulsory or elective, have been held applicable, whether the injury occurred on land, or on water within admiralty jurisdiction."

In a further annotation of the subject in 56 A. L. R., at page 356, that rule is reaffirmed. In 1 Am. Jur., Admiralty, Sec. 50, p. 576, the rule is stated in this language:

"State statutes providing compensation for employees through commissions may be treated as amending or modifying the maritime law in cases where they concern purely local matters and occasion no interference with the uniformity of such law in its international and interstate relations. Thus, where the injured person was employed under a nonmaritime contract, state compensation acts, whether compulsory or elective, have been held applicable, whether the injury occurred on land, or on water within admiralty jurisdiction."

Many cases from different jurisdictions are cited in the annotations and in American Jurisprudence in support of the rule, but we have examined only decisions from the Supreme Court of the United States, because its decisions are controlling on questions of this nature. Among such decisions are the following: Grant Smith-Porter Ship Co. v. Rhode, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; State Industrial Commission v. Nordenholt Corporation, 259 U. S. 263, 66 L. Ed. 933, 42 Sup. Ct. Rep. 473, 25 A. L. R. 1013; State Industrial Board v. Terry & T. Co., 273 U. S. 639, 71 L. Ed. 817, 47 Sup. Ct. Rep. 90; Alaska Packers Association v. Industrial Accident Commission, 276 U. S. 467, 72 L. Ed. 656, 48 Sup. Ct. Rep., 346; Miller Indemnity Underwriters v. Braud, 270 U. S. 59, 70 L. Ed. 470, 46 Sup. Ct. Rep. 194.

The case last cited affirms the judgment of this court in the same case, reported as Miller Indemnity Underwriters v. Boudreaux (Com. App.) 261 S. W. 137. In that case a diver was suffocated while sawing off the timbers of an abandoned set of ways once used for launching ships, but which had become an obstruction to navigation, and it was held by this court that our compensation statutes were applicable.

Stronger argument could be made that that case came exclusively within the admiralty jurisdiction of the Federal courts than could be made in the instant case. Here the deceased employee was more certainly employed by a nonmaritime contract than in that case. In general his employment came squarely within the terms of our Workmen's Compensation Law, and the fact that he lost his life in navigable waters does not bring about a situation wherein to permit him to recover compensation under the contract of insurance would work any "material prejudice to the characteristic features to the general maritime law."

It would not be expected that we review all of the many cases cited in the briefs and no useful service would be rendered by our doing so. But, since defendant in error seems to place much reliance upon two decisions of the Supreme Court of the United States, we shall take notice of them in this opinion. The first of these cases is London Guarantee and Accident Co. v. Industrial Accident Commission, 279 U. S. 109, 49 Sup. Ct. 296, 73 L. Ed. 632. In that case an employee of Morris Pleasure Fishing Company was drowned. The company operated fishing boats for hire off the California Coast. One of the company's boats broke loose from its moorings and the employee went out in a small boat to attempt to save her. This small boat was overturned and he was drowned. It was held in that case that the maritime jurisdiction of the Federal courts was exclusive, and that no recovery could be had under the California Workmen's Compensation Law. The opinion in that case, written by Chief Justice Taft, is a very exhaustive one, which carefully reviews and distinguishes the decisions upon the question presented. One distinction between that case and some of those reviewed was pointed out to be that the contract there before the court was one calling for maritime services purely. By no reasoning could the contract in the instant case be classified as maritime.

The Braud case, which, as above noted, affirmed the judgment of this Court in the same case, was distinguished by this language:

"* * * The Braud case was one of a maritime tort. But it had no characteristic feature of the general maritime law except locality, and it was very like in its relation to the state law to the Rhode case. The employment was not maritime, and the transaction and the circumstances thus seemed to have but one characteristic that was maritime. * * *."

Another case upon which defendant in error places much reliance is the case of Northern Coal & Dock Co. v. Strand, 278 U. S. 142, 49 Sup. Ct. 88, 73 L. Ed. 232. The following quotation from the opinion in that case reflects the distinction between it and the case before us:

"Strand's employment contemplated that he should labor both upon the land and the water. When killed he was doing longshore or stevedore work on a vessel lying in the navigable waters, according to his undertaking. His employment, so far as it pertained to such work, was maritime; the tort was mari-

time; and the rights of the parties must be ascertained upon a consideration of the maritime law. * * *."

Our conclusion is, as indicated above, that the trial court erred in sustaining the plea to its jurisdiction and the Court of Civil Appeals erred in affirming its judgment.

██ The opinion of the Court of Civil Appeals discusses the question of whether or not the deceased, Adolphus Brown, was drowned while in the usual course of the business of his employer. It is our view that that court was without jurisdiction to decide that question in this proceeding. As stated in the opening part of this opinion, the jury found in favor of plaintiff in error upon that issue. No assignment attacked that finding in the Court of Civil Appeals. Its conclusion on that question would not have the effect of affirming the trial court's judgment upon another ground, but its effect would be to render judgment on the merits against the appealing party. A motion for judgment non obstante veredicto was filed by defendant in error in the trial court subject to its plea to the jurisdiction, and a motion for judgment on the verdict was filed by plaintiff in error. Those motions were not reached and the trial court has not ruled upon the question of the character of the judgment to be rendered on the merits. Until that question is reached and decided by the trial court there is nothing for review except its action in dismissing the cause. That portion of the opinion of the Court of Civil Appeals which discusses the merits of the claim for compensation will therefore not be regarded by the trial court as binding upon it when this case is remanded thereto. We express no opinion upon the question, because of want of jurisdiction to decide same in this proceeding.

█ There remains the question of what order to enter in this case. From what is written above it is manifest that it is our opinion that the judgments of the trial court and the Court of Civil Appeals should both be reversed and the cause remanded to the trial court. The effect of our order setting aside the order of the trial court dismissing the case for want of jurisdiction is to restore the case to the status of one which has been tried on its merits and in which no order has been entered on plaintiff in error's motion for judgment on the verdict or upon defendant in error's motion for judgment non obstante veredicto. In such situation the trial court is authorized to enter judgment on the merits nunc pro tunc. Gulf C. & S. F. Ry. Co.

v. Canty, 115 Texas 537, 285 S. W. 296; Cortimeglia v. Davis, 116 Texas 412, 292 S. W. 875.

Accordingly we direct that the judgments of the trial court and the Court of Civil Appeals both be reversed and that the cause be remanded to the trial court with instructions to that court that it is authorized to render judgment upon the merits of the case, after reasonable notice to the parties. We do not suggest the character of judgment to be rendered; that is a question within the province of the trial court to decide in the first instance. We merely direct that it proceed without another trial to render final judgment in this case. That judgment will, of course, be subject to being set aside upon motion for new trial and to review as any other final judgment. Reversed and remanded with instructions.

Opinion adopted by the Supreme Court December 4, 1940.

Rehearing overruled January 8, 1941.