**Harry WILLIAMS, Appellant,**

v.

**William H. NEALON, M.D. and Eric M. Walser, M.D., Appellees.**

No. 01–05–00553–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 13, 2006.

Ralph D. Huston, The Huston Law Firm, Houston, TX, for Appellant.

S.R. Lewis Jr., Lewis & Williams LLP, George W. Vie III, Mills Shirley, LLP, Galveston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices TAFT and NUCHIA.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, Harry Williams, brought a medical malpractice claim against appellees, William H. Nealon, M.D. and Eric M. Walser, M.D., both doctors at the University of Texas Medical Branch at Galveston (UTMB). The doctors filed a motion to dismiss, pursuant to section 101.106(f) of the Texas Civil Practice and Remedies Code, which the trial court granted. In this appeal, we consider whether the doctors sufficiently proved that they were entitled to dismissal under the statute. We reverse and remand.

## BACKGROUND

Williams had his gall bladder removed by his treating physician in Dallas. After he moved to Galveston, his Dallas physician recommended one additional follow-up visit to conduct an endoscopic retrograde cholangiopancreatography (ERCP).[1] On

---

1. According to Williams's brief, an ERCP is an endoscopy of the biliary tree and the pancreatic duct. By injecting contrast media, a retrograde image of both structures can be

April 16, 2002, Williams went to UTMB at Galveston to seek the follow-up procedure that his Dallas physician had recommended. From there, Williams was sent to the 4 C's clinic for a referral before UTMB would perform the ERCP.

At the 4 C's clinic, Williams was seen by Dr. Angela Champion, who ordered an ostomy procedure and referred Williams to UTMB's department of General Surgery.

At UTMB, Williams was seen by Dr. Nealon. Williams told Nealon about the directions that he had been given by his Dallas physician. However, Nealon refused to perform the ERCP that Williams's Dallas physician had recommended. Instead, Nealon ordered a percutaneous transhepatic cholangiogram (PTCA).[2] The PTCA was performed by Drs. Nealon and Walser. After the procedure, Williams complained of increasing abdominal pain. He was given a diagnostic scan and then transferred to intensive care for treatment of acute pancreatitis. Dr. Nealon later informed Williams that his pancreas had been "hit" during the procedure and that it had reacted violently.

Williams filed suit against Drs. Nealon and Walser, alleging that "Defendants violated the duty owed to Plaintiff to exercise the ordinary care and diligence exercised by other physicians and/or health care providers in the same or similar circumstances in connection with the subject treatment and was [sic] negligent." Williams's petition also alleged that " . . . Nealon and Walser were within the course and scope of their employment with the University of Texas Medical Branch at Galveston."

Nealon and Walser filed a joint motion to dismiss, based section 101.106(f) of the Texas Civil Practice and Remedies Code, which the trial court granted. Williams then filed this appeal.

## PROPRIETY OF DISMISSAL

In two issues on appeal, Williams contends that the trial court erred in granting the doctors' motion for dismissal because section 101.106(f): (1) violates the open courts provision of the Texas Constitution, and (2) does not mandate the dismissal of his common-law medical malpractice case against the doctors. Because we find Williams's second issue on appeal to be dispositive, we address it first.

### Standard of Review

The proper standard of review for a motion to dismiss is abuse of discretion. *Bowers v. Matula,* 943 S.W.2d 536, 538 (Tex.App.-Houston [1st Dist.] 1997, no writ). In determining whether a trial court abused its discretion, we must determine whether the trial court acted with reference to guiding rules and principles or whether the trial court's actions were arbitrary and unreasonable. *See Miller v. Gann,* 822 S.W.2d 283, 286 (Tex.App.-Houston [1st Dist.] 1991), writ denied, 842 S.W.2d 641 (Tex.1992). In addition, if the ruling is contrary to the case law, it is an abuse of discretion. *See Baywood Country Club v. Estep,* 929 S.W.2d 532, 535 (Tex.App.-Houston [1st Dist.] 1996, writ denied). The scope of review is limited to those arguments raised in the motion to

formed on an x-ray to assist in the diagnosis of obstructions, such as gallstones.

2. According to Williams's brief, a PTCA is a type of x-ray examination of the bile ducts inside and outside of the liver, performed after a contrast medium is injected directly into a liver bile duct. A long, thin, flexible needle is inserted through the skin into the liver. With guidance from a fluoroscope, the bile duct is located and contrast medium is injected. The contrast medium flows through the ducts and can be seen on a fluoroscopic monitor.

dismiss. *Brown v. Aetna Cas. & Sur. Co.*, 135 Tex. 583, 145 S.W.2d 171, 174 (1940).

### Section 101.106 of the Texas Tort Claims Act

 Section 101.106 of the Texas Civil Practice and Remedies Code is part of the Texas Tort Claims Act and is entitled "Election of Remedies." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 2005). The purpose of section 101.106 is to force a plaintiff to choose whether he will seek to impose tort liability on a governmental unit or on governmental employees, individually. *Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex. App.-Waco 2005, pet. filed). Once such an election is made, it is irrevocable. *Id.*

Section 101.106 provides in part:

(a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.

. . . .

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE § 101.106(a), (b), (e), (f).

In this case, Williams sued only the doctors-he did not name UTMB as a defendant. Therefore, we look to subsection (f) of section 101.106 to determine whether dismissal of the suit against the doctors was appropriate.

### Suit Brought against Defendants in Official or Individual Capacities?

 In their motion, the doctors point out that Williams's petition alleged that the doctors "were within the course and scope of their employment with the University of Texas Medical Branch at Galveston." In support of their motion, the doctors provide affidavits that state: "All of my interaction with the patient, Harry Williams, was within the scope of my employment with UTMB." In sum, the doctors argue that they are entitled to a dismissal because Williams sued them in their official capacity, that such a suit is actually a suit against the State, and that, even though given the opportunity, Williams did not amend his petition to dismiss the claims against them and name UTMB as a defendant.

Williams, however, argues that he did not sue the doctors in their official capacities. Instead, he argues that he sued the doctors in their individual capacities, and that he is seeking to recover damages from

the doctors, not UTMB, on a common-law malpractice cause of action.[3]

To determine whether Williams's suit is against the doctors in their official capacities or in their individual capacities we need look no further than the language of section 101.106(f), which provides that "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment *and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.*" TEX. CIV. PRAC. & REM.CODE § 101.106(f) (emphasis added).

■ Therefore, to be entitled to a dismissal under section 101.106(f) a defendant must show that the plaintiff's suit (1) was based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought under the Texas Tort Claims Act against that governmental unit. *Phillips v. Dafonte,* 187 S.W.3d 669, 675 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

It is undisputed that the doctors meet the first requirement of section 101.106(f). Both doctors submitted affidavits testifying that their treatment of Williams was undertaken in the course of their employment with UTMB. Indeed, Williams's petition acknowledges that the doctors were acting within the "course and scope" of their employment with UTMB.

However, the doctors' motion to dismiss makes no showing of section 101.106(f)'s second requirement—that Williams's claims could have been brought against UTMB under the Texas Tort Claims Act.

The Tort Claims Act waives sovereign immunity in three areas: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) injury caused by a premise defect. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.021–.022(a) (Vernon 2005 & Supp.2005), *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002).

In his petition, Williams alleges that "Defendants violated the duty owed to Plaintiff to exercise the ordinary care and diligence exercised by other physicians and/or health care providers in the same or similar circumstances in connection with the subject treatment and was [sic] negligent." Such a claim is, quite simply, a claim of medical negligence and is not encompassed by the Texas Tort Claim Act's limited waiver of sovereign immunity.

Because medical negligence is the basis for Williams's claims against the doctors, the doctors cannot meet the second requirement of section 101.106(f). That is, the doctors have not shown that Williams's claims could have been brought against UTMB under the Texas Tort Claims Act.

We note that our sister court of appeals recently considered this same issue in *Phillips v. Dafonte,* 187 S.W.3d at 669. In *Phillips,* the plaintiff filed suit against two doctors at UTMB alleging that they failed to tell her that a biopsy they had performed revealed an early form of breast cancer. *Id.* at 671–72. The doctors filed a motion to dismiss based on section 101.106(f). The trial court denied the motion, and the doctors brought an interlocutory appeal. *Id.* at 672. The Fourteenth

---

**3.** We note that a state-employed doctor or nurse may have official immunity from claims arising out of the exercise of governmental discretion, but is not immune from common-law tort liability arising from the exercise of medical discretion. *Kassen v. Hatley,* 887 S.W.2d 4, 11 (Tex.1994).

Court of Appeals held that, even though the doctors were acting within the scope of their employment with UTMB, they were not entitled to dismissal under section 101.106(f) because they did not show that the plaintiff's claim—negligent failure to communicate a medical diagnosis—could have been brought against UTMB under the Texas Tort Claims Act. *Id.* at 676–77. For the reasons given above, we agree with the holding in *Phillips* and conclude that the doctors in this case are, likewise, not entitled to a dismissal of the claims against them.

## CONCLUSION

Because the doctors in this case did not show that Williams's medical negligence claims could have been brought against UTMB under the Texas Tort Claims Act, the trial court abused its discretion in concluding that Williams's claims were against the doctors in their official capacities and in dismissing his claims against the doctors pursuant to section 101.106(f).

Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.