Reversed and Remanded and Opinion filed May 24, 2007








Reversed and
Remanded and Opinion filed May
24, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00004-CV

____________

 

DHIREN S. SHETH, M.D., Appellant

 

V.

 

DONALD C. DEAREN, Appellee

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 2005-73489

 



 

O P I N I O N

Appellant, Dhiren S. Sheth, M.D. (ADr. Sheth@) brings this
appeal following the trial court=s denial of his
motion to dismiss pursuant to Section 101.106(f) of the Texas Tort Claims Act. 
In his sole issue, Dr. Sheth argues that the trial court erred in denying his
motion to dismiss.  We reverse and remand.








I.  Background

In September of 2003, appellee, Donald C. Dearen, sustained
a hip fracture and was taken into surgery at Memorial Hermann Hospital.  Dearen
was treated by Dr. Sheth, an orthopedic surgeon practicing at the University of
Texas Health Science Center at Houston (AUTHSCH@).  As part of Dr.
Sheth=s appointment at
UTHSCH, he provided medical treatment to patients at Memorial Hermann Hospital.

In treating Dearen=s hip fracture,
Dr. Sheth performed surgery which involved the implantation of an orthopedic
hardware device, known as a Ashort Gamma nail,@ into Dearen=s body.[1] 
As a result of this surgery, Dearen brought suit alleging personal injuries
caused by Dr. Sheth=s negligence.  Dr. Sheth filed a motion to
dismiss, which the trial court denied.      

II.  Analysis

In Dr. Sheth=s sole issue, he
contends that the trial court erred in denying his motion to dismiss pursuant
to Section 101.106(f) of the Texas Tort Claims Act.  Section 101.106(f)
provides that:

If a suit is filed against an
employee of a governmental unit based on conduct within the general scope of
that employee=s employment and if it could have been brought under
this chapter against the governmental unit, the suit is considered to be
against the employee in the employee=s official
capacity only. On the employee=s motion, the suit against the employee shall
be dismissed unless the plaintiff files amended pleadings dismissing the
employee and naming the governmental unit as defendant on or before the 30th
day after the date the motion is filed.








Tex. Civ. Prac. & Rem. Code ' 101.106(f).  In
this case, Dearen does not dispute that his suit was based on conduct within
the general scope of Dr. Sheth=s employment with UTHSCH.  The parties
disagree, however, as to whether Dearen=s suit could have
been brought under the Tort Claims Act (TCA) against UTHSCH.  

In Texas, a governmental agency is not liable for the torts
of its officers or agents unless there is a specific legislative waiver of
immunity. Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). 
Sovereign immunity can only be waived by clear and unambiguous language.  Univ.
of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175, 177 (Tex. 1994). 
The Texas Legislature enacted the TCA to waive sovereign immunity in limited
circumstances.  See Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584
(Tex. 1996).








As the movant on the motion to dismiss, it is Dr. Sheth=s burden to point
to the facts evidencing that Dearen=s suit could have
been brought against UTHSCH.  See Phillips v. Dafonte, 187 S.W.3d 669,
677 (Tex. App.CHouston [14th Dist.] 2006, no pet.) (AWe find that the
doctors failed to establish that Dafonte=s suit is one that
could have been brought against UTMB.@); Tejada v.
Rowe, 207 S.W.3d 920, 923 (Tex. App.CBeaumont 2006,
pet. filed)  (AWe find that [the movants] met their burden of proof
under section 101.106(f).@); Williams v. Nealon, 199 S.W.3d
462, 466 (Tex. App.CHouston [14th Dist.] 2006, pet. filed) (A[T]he doctors have
not shown that Williams=s claims could have been brought against
UTHSCH under the Texas Tort Claims Act.@).  The primary
source of those facts are the plaintiff=s pleadings,
however, other evidence is proper if relevant to the issue of waiver of
sovereign immunity.  See Tex. Natural Res. Conservation Comm=n v. White, 46 S.W.3d 864,
868 (Tex. 2001) (AWe must examine the plaintiff=s pleadings and,
to the extent relevant to the jurisdictional issue, the evidence submitted by
the parties in order to determine if the government waived sovereign immunity.@); see also
Phillips, 187 S.W.3d at 676-77 (analyzing plaintiff=s petition as part
of its 101.106(f) analysis); Tejada, 207 S.W.3d at 922-23 (reviewing, as
part of its 101.106(f) analysis, plaintiff=s petition and two
expert reports attached to that petition in deciding whether plaintiff=s suit could have
been brought under the TCA); Franka v. Velasquez, 216 S.W.3d 409, 412
(Tex. App.CSan Antonio 2006, pet. filed) (reviewing Athe petition and
the evidence presented@ in disposing of appellant=s 101.106(f)
issue).  In determining whether the plaintiff alleges facts supporting a
finding of waiver of sovereign immunity, we look at the substance of the
plaintiff=s pleadings rather than his characterizations of
them.  See Phillips, 187 S.W.3d at 676-77 (looking at Athe real substance
of [plaintiff=s] petition@ in determining,
as part of its 101.106(f) analysis, whether plaintiff=s claim could have
been brought under the TCA); see also Dallas County Mental Health &
Mental Retardation v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998) (AThe real substance
of plaintiffs= complaint is that Roger=s death was
caused, not by the condition or use of property, but by the failure of Hillside=s staff to
restrain him once they learned he was still suicidal.@); Kerrville,
923 S.W.2d at 585 (AThe gravamen of their complaint is that
KSH=s non‑use of
an injectionable drug was the cause of their daughter=s death.@); Univ. of
Tex. Health Sci. Ctr. v. Schroeder, 190 S.W.3d 102, 106 (Tex. App.CHouston [1st
Dist.] 2005, no pet.) (AHere, the gravamen of Schroeder=s complaints
amount to negligent supervision.@).  Where the
facts taken from the plaintiff=s pleadings are undisputed, the question
of whether those pleadings support a jurisdictional finding of waiver of
sovereign immunity is one of law and is thus reviewed de novo.  See
Tex. Dep=t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004) (A[W]hether
undisputed evidence of jurisdictional facts establishes a trial court=s jurisdiction is
also a question of law.@); see also Tex. Natural Res.
Conservation Comm=n v. IT‑Davy, 74 S.W.3d 849,
855 (Tex. 2002) (holding that the issue of whether a party has properly alleged
a valid waiver of sovereign immunity is jurisdictional and is reviewed de
novo); Waxahachie Independent School District v. Johnson, 181 S.W.3d
781, 787 (Tex. App.CWaco 2005, pet. filed) (same); Kelso v.
Gonzales Healthcare Sys., 136 S.W.3d 377, 381 (Tex. App.CCorpus Christi
2004, no pet.) (same).  In this case, Dr. Sheth does not dispute the facts
presented in Dearen=s pleadings; rather, he disputes Dearen=s characterization
of those facts.  As a result, we apply the de novo standard.  See
Miranda, 133 S.W.3d at 226.[2]









Dr. Sheth argues that Dearen=s suit could have
been brought against UTHSCH pursuant to Section 101.021(2) of the TCA, which
waives governmental immunity for Apersonal injury
and death so caused by a condition or use of tangible personal or real property
if the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.@  Tex. Civ. Prac. & Rem. Code ' 101.021(2).  In
his motion to dismiss, Dr. Sheth relied on Dearen=s original
petition, a report by Dearen=s expert, and Dearen=s responses to
various discovery to support his contentions.  Dr. Sheth contends that Dearen=s pleadings allege
the misuse of a device implanted into his body, which caused Dearen=s injuries.  We
note that the plaintiff=s pleadings should be the primary focus of
our inquiry regarding this jurisdictional issue of waiver of sovereign
immunity.  See White, 46 S.W.3d at 868. 

Dearen=s expert wrote a report describing the
procedure Dr. Sheth performed on Dearen.  The report states that Dr. Sheth
chose to stabilize Dearen=s fracture by implanting a device, dubbed
the Ashort Gamma Nail,@ into Dearen=s body.  The
report further states that because the Gamma nail is short, it requires a
distal interlocking screw for stability.  Dearen=s original
petition summarized his negligence claims arising out of that surgery as:








(1) failing to initially align the nail hole and the hole in the jig in
order to permit the placement of the intramedullary hip screw[3]
to permit distal interlocking,

(2) failing to correct the misalignment of the nail hole and the hole
in the jig in order to permit the placement of the intramedullary hip screw to
permit distal interlocking,

(3) failing to engage the distal interlock of the intramedullary hip
screw in order to ensure proper leg alignment, and

(4) failing to properly follow the patient to provide early
intervention that would have limited the scope and need for subsequent
surgeries and would have limited his recovery time.  

Such breaches of the standard of
care were, among others, individually and collectively proximate causes of
Plaintiff=s injuries as claimed herein.

When
Dearen=s petition is
viewed in conjunction with his expert=s report, which
provides the necessary background to understand the procedure, it becomes clear
that Dearen is complaining that Dr. Sheth=s failure to
stabilize the short Gamma nail with the use of a distal interlocking screw
caused his injuries.  








The dispositive controversy in this jurisdictional
challenge is the characterization of Dr. Sheth=s failure to
stabilize the Gamma nail with the distal interlocking screw.  A suit can only
be brought under Section 101.102(2) when there is a use of property.  See
Texas A & M Univ. v. Bishop, 156 S.W.3d 580, 583 (Tex. 2005)
(finding that, because the governmental officials did not use the property,
sovereign immunity was not waived thereby allowing suit to be brought against
the university); San Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 246
(Tex. 2004) (finding that the governmental entity did not use the property as
required to invoke waiver of immunity); Kerrville, 923 S.W.2d at 584
(holding that Amere non-use of property@ [cannot] support
a claim under the Texas Tort Claims Act@).  Dr. Sheth
frames Dearen=s petition as alleging a misuse of propertyCthe short Gamma
nail was misused in that it was improperly secured thereby causing Dearen=s injuries. 
Dearen characterizes his claims as a non-use of propertyCDr. Sheth=s failure to use
the distal interlocking screw caused his injuries.      

We find the characterization of Dearen=s pleadings as
alleging a misuse of the short Gamma nail to be a more accurate representation
of the substance of Dearen=s claims.  See Bossley, 968 S.W.2d
at 343 (looking at Athe real substance of plaintiff=s complaint@ to determine
whether a sufficient use was alleged as required by 101.021(2)); Kerrville,
923 S.W.2d at 585 (AThe gravamen of their complaint is that
KSH=s non‑use of
an injectionable drug was the cause of their daughter=s death.@); Phillips,
187 S.W.3d at 676-77 (looking at Athe real substance
of [plaintiff=s] petition@ in determining,
as part of its 101.106(f) analysis, whether plaintiff=s claim could have
been brought under the TCA).  

The distal interlocking device is relevant only as a
necessary[4]
part of the larger device, the short Gamma nail.  It is the proper use of the
entire device (the short Gamma nail), which implicates the proper use of all
the individual parts that aggregate to make the whole device effective, that is
crucial in stabilizing the hip thereby avoiding further injury.  The use or
misuse of the screw is of no consequence in and of itself: it is merely a piece
of a larger, multi-part device and is not designed to function alone.








The line of cases in which courts have found a non-use, and
therefore non-waiver of immunity, is distinguishable.  For instance, in Texas
Natural Resource Conservation Commission v. White, White argued that TNRCC=s failure to
continue use of a pump which was installed on his property to dissipate
gasoline vapors caused a fire which destroyed that property.[5] 
46 S.W.3d at 870.  The supreme court held that such a claim involves a non-use
of property outside the scope of the sovereign immunity waiver statute.  Id. 
Importantly, the unused device (the pump) was alleged to be the direct
cause of damages.  Id.  In this case, however, the device that Dearen claims
was not used (the distal interlocking screw) is only a piece of a larger
device (the Gamma nail) that is alleged to be the direct cause of his
injuries.  In Kassen v. Hatley, the supreme court held that Athe non-use of
available drugs during emergency medical treatment is not a use of tangible
personal property that triggers waiver of sovereign immunity.@  887 S.W.2d 4, 14
(Tex. 1994).  Similarly, in Kerrville State Hospital v. Clark, the
supreme court found that the failure of the hospital to administer an
injectionable drug to the plaintiff was a non-use of tangible personal
property.  923 S.W.2d at 586.  As a result, the court found that the plaintiff
failed to plead facts sufficient to support a finding of waiver of sovereign
immunity.  Id.  In reaching its conclusion, the court stated:

There cannot be waiver of sovereign
immunity in every case in which medical treatment is provided by a public
facility.  Doctors in state medical facilities use some form of tangible
personal property nearly every time they treat a patient.  Because of this
fact, a patient suing for negligence could always complain that a different
form of treatment than the one employed would have been more effective and
still claim waiver under the Act.  If such a complaint were enough to
constitute the use of tangible personal property under the Act, the doctrine of
sovereign immunity would be rendered a nullity.      








Id. at 585-86. 
Dearen does not complain that a different Aform of treatment@ should have been
used.  Instead, Dearen complains that the treatment he received, implantation
of the Gamma nail device, was improperly performed.  As such, we find these
cases to be inapplicable to the facts at hand.  See also Bishop, 156
S.W.3d at 583 (finding that the knife alleged to be the cause of plaintiff=s injuries was not
used as required under Section 101.021(2) because the governmental officials
merely allowed the students to use it as opposed to putting it in use
themselves); Cowan, 128 S.W.3d at 246 (holding that allowing the patient
to keep his suspenders and walker, which he later used to kill himself, was not
a use of property). 

Dearen argues that his amended petition, filed after Dr.
Sheth filed his motion to dismiss, more clearly reflects his claim that Dr.
Sheth=s failure to use a
distal interlocking screw, rather than the misuse of property, caused his
injuries.  Assuming without deciding that we can consider his amended petition,[6]
we do not find it to be additionally persuasive.  Dearen=s amended petition
offers essentially the same facts and claims as his original petition; however,
in the amended petition, he explicitly uses phrases such as Anon-use@ and Adid not use.@  Despite these
pointed characterizations, the gravamen of his petitions remains unchanged in
pleading that Dr. Sheth=s misuse of the nail device (in failing to
secure it with the screw) led to his injuries.  See Kerrville, 923
S.W.2d at 585 (AThe gravamen of their complaint is that
KSH=s non‑use of
an injectionable drug was the cause of their daughter=s death.@); Phillips,
187 S.W.3d at 676-77 (looking at Athe real substance
of [plaintiff=s] petition@ in determining,
as part of its 101.106(f) analysis, whether plaintiff=s claim could have
been brought under the TCA).








Dearen also seems to contend that because some of his
claims involved general negligence, his suit could not have been brought
against UTHSCH under the TCA because such claims are outside the scope of the
sovereign immunity waiver provisions.  A suit can be brought under the TCA,
however, when there are both claims within and outside the scope of the TCA=s sovereign
immunity waiver provisions.  See, e.g., Salcedo v. El Paso Hosp. District,
659 S.W.2d 30, 33 (Tex. 1983) (finding that plaintiff=s allegations
stated a claim within the scope of the TCA where plaintiff alleged non-use of
property and misuse of property); Tejada, 207 S.W.3d at 922-23 (finding
that plaintiff=s claims could have been brought under the TCA where
plaintiff pleaded claims of general negligence and negligence resulting from
the use of tangible property).  Because we find that Dearen=s pleadings allege
a misuse of tangible property causing his injuries, claims that are within the
scope of the TCA waiver provisions, the fact that he also alleged general
negligence is irrelevant.  We sustain Dr. Sheth=s sole issue.

III.  Conclusion

Because we find that Dearen=s suit could have
been brought against UTHSCH, we reverse the order of the trial court denying
Dr. Sheth=s motion to dismiss.  This cause is remanded to the
trial court with instructions to enter an order of dismissal of Dearen=s claims against
Dr. Sheth, with prejudice, and for such further proceedings and orders as the
parties may show themselves justly entitled to receive in accordance with this
opinion.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered and Opinion filed May
24, 2007.

Panel consists of Chief Justice Hedges and
Justices Hudson and Guzman.

 

 









[1]  It is not clear from the record where exactly the
Gamma nail was placed.





[2]  In Williams v. Nealon, our sister court, in
analyzing the appellee=s 101.106(f) motion to dismiss, stated that Athe proper standard of review for a motion to dismiss
is abuse of discretion.@  199 S.W.3d at 465.  To the extent the court was
holding that all motions to dismiss are reviewed for abuse of discretion, we
disagree.  The proper standard of review to be employed is dictated by the
substance of the issue to be reviewed as opposed to the procedural vehicle
through which that issue is developed.  See In re Doe, 19 S.W.3d 249,
253 (Tex. 2000) (stating that, in order to determine the proper standard of
review, Awe must determine whether the [issue] is a question of
law or fact@); Valley Baptist Med. Ctr. v.  Stradley, 210
S.W.3d 770, 773 (Tex. App.CCorpus Christi
2006, pet. filed) (finding that, while motions to dismiss are generally
reviewed for abuse of discretion, the issue of whether plaintiff=s claim is a health care liability claim in accordance
with the statute at issue is a question of law and is thus reviewed de novo). 
Because the issue in this caseCwaiver of
sovereign immunityCis legal in nature, we apply the de novo standard.





[3]  To the extent there is a distinction, Dearen
apparently intended to allege that Dr. Sheth failed to align the nail hole and
the jig to permit the placement of the distal interlocking screw.  As
the expert=s report states, the procedure itself was called an Aintramedullary nailing@ and involved the placement of a short Gamma nail which requires a
distal interlocking screw to Alock@ the nail in place.  Dearen=s amended petition further clarifies this by alleging
the same facts, but substituting the term Adistal
interlocking screw@ for Aintramedullary
hip screw.@      





[4]  Both Dearen, in his amended petition, and Dearen=s expert, in his report, stated that the nail Arequires the
distal interlocking screw for stability (emphasis added).@





[5]  White also argued that the pump=s use on his property caused the damages, however,
this claim was not considered by the court because it involved factual
allegations first raised on appeal.  White, 46 S.W.3d at 870.





[6]  Dr. Sheth argues that once he filed his motion to
dismiss pursuant to 101.016(f), his right to dismissal was perfected and any
subsequent pleadings by Dearen could not effect that right.  See Villasan v.
O'Rourke, 166 S.W.3d 752, 758 (Tex. App.CBeaumont
2005, pet. filed)  (finding that the defendant=s right to dismissal under 101.106(e) was perfected upon the filing of
his motion to dismiss and any subsequent pleadings Ado not moot the right created by the filing of the
motion under section 101.106@).  Because we
find that the amended petition provides no additional value, we need not
address this argument.