Opinion issued March 26, 2009








 

 








In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00366-CV

____________


SAFWAT KAMEL, Appellant


V.


TIFFANY SOTELO, M.D., Appellee






On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 2006-35924B






MEMORANDUM OPINION


 Appellant, Safwat Kamel, appeals from a judgment dismissing his health-care-liability suit and related claims against appellee, Dr. Tiffany Sotelo. We determine
whether the trial court erred in granting Sotelo's motion to dismss the claims against
her under Texas Civil Practice and Remedies Code section 101.106, specifically,
under section 101.106(f). See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f)
(Vernon 2005). Appellant claims that the trial court erred in granting Sotelo's motion
to dismiss because Sotelo, a medical resident, was not an employee for the purposes
of section 101.106. We affirm.

I. Background In June 2005, Kamel went to Lyndon B. Johnson General Hospital complaining
of testicular enlargement. He was diagnosed with right hydrocele and right
epididymitis by Run Wang, M.D., and Tiffany Sotelo, M.D., a medical resident of the
University of Texas Health Science Center at Houston ("UTHSCH"). Wang and
Sotelo performed exploratory surgery on Kamel in order to remove fluid that had
formed around Kamel's testicle. During the surgery, a determination was made that
it was medically necessary to remove Kamel's right testicle. Subsequently, Kamel
filed suit against Wang, Sotelo, and Lyndon B. Johnson General Hospital ("LBJ
Hospital"), alleging negligence. Kamel also brought suit against UTHSCH under the
Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon
2005).

 Kamel ultimately dismissed Wang and LBJ Hospital, leaving Sotelo and
UTHSCH as defendants. Sotelo filed a motion to dismiss pursuant to sections
101.106(a) and 101.106(f) of the Texas Civil Practice and Remedies Code, which the
trial court granted. Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (f). (1) Sotelo
argued that, because Kamel had chosen to file suit against UTHSCH, a governmental
entity, he had made an irrevocable election under section 101.106(a) and was barred
from suing or recovering against Sotelo for the same subject matter. Sotelo also
maintained that a dismissal was warranted under section 101.106(f) of the Texas Tort
Claims Act because the alleged misconduct was within the general scope of Sotelo's
employment with UTHSCH and because suit was brought against UTHSCH. 

 Kamel's motion for new trial was denied and this appeal follows.II. Standard of Review When, as here, our review of a ruling on a motion to dismiss under section
101.106(f) involves a question of law applied to uncontroverted facts, our standard
of review is de novo. See Turner v. Zellers, 232 S.W.3d 414, 418 (Tex. App.--Dallas
2007, no pet.); see also Sheth v. Dearen, 225 S.W.3d 828, 831 (Tex. App.--Houston
[14th Dist.] 2007, no pet.) (applying de novo standard of review in reviewing waiver
of sovereign immunity claim.); see also Poland v. Willerson, No. 01-07-00198-CV,
2008 WL 660334, *4 (Tex. App.--Houston [1st Dist.] March 13, 2008, pet. denied)
(holding review of ruling on motion to dismiss under section 101.106(f) subject to de
novo review); Williams v. Nealon, 199 S.W.3d 462, 464 (Tex. App.--Houston [1st
Dist.] 2006, pet. filed) (although providing that ruling under section 101.106(f) is
generally reviewed for abuse of discretion, also recognizing that ruling that is
"contrary to case law" is inherent "abuse of discretion," thereby indicating that trial
court will, as matter of law, abuse its discretion if it misapplies law); cf. Intracare
Hosp. N. v. Campbell, 222 S.W.3d 790, 795 (Tex. App.--Houston [1st Dist.] 2007,
no pet.) (in considering standard of review of ruling under Texas Civil Practice and
Remedies Code section 74.351, noting, "[a trial court has no discretion in determining
what the law is, which law governs, or how to apply the law . . . Accordingly, the
standard of review of this particular ruling [concerning a pure question of law] is the
same, regardless of whether it is described as abuse of discretion or de novo.")
(citation omitted). Our scope of review "is limited to those arguments raised in the
motion to dismiss." Williams, 199 S.W.3d at 464-65.III. Section 101.106 of the Texas Tort Claims Act (2)

 Section 101.106 of the Texas Civil Practice and Remedies Code is part of the
Texas Tort Claims Act and is entitled "Election of Remedies." See Tex. Civ. Prac.
& Rem. Code Ann. § 101.106 (Vernon 2005). The purpose of section 101.106 is to
force a plaintiff to choose whether he will seek to impose tort liability on a
governmental unit or on governmental employees, individually. Williams v. Nealon,
199 S.W.3d 462, 465 (Tex. App.--Houston [1st Dist.] 2006, pet. filed); Waxahachie
Indep. Sch. Dist. v. Johnson, 181 S.W.3d 781, 785 (Tex. App.--Waco 2005, pet.
denied). Once such an election is made, it is irrevocable. Johnson, 181 S.W.3d at
785.

 Section 101.106 provides in relevant part:

 (a) The filing of a suit under this chapter against a governmental unit
constitutes an irrevocable election by the plaintiff and immediately and
forever bars any suit or recovery by the plaintiff against any individual
employee of the governmental unit regarding the same subject matter.


 (b) The filing of a suit against any employee of a governmental unit
constitutes an irrevocable election by the plaintiff and immediately and
forever bars any suit or recovery by the plaintiff against the
governmental unit regarding the same subject matter unless the
governmental unit consents.


 . . . .


 (e) If a suit is filed under this chapter against both a governmental unit
and any of its employees, the employees shall immediately be dismissed
on the filing of a motion by the governmental unit.


 (f) If a suit is filed against an employee of a governmental unit based on
conduct within the general scope of that employee's employment and if
it could have been brought under this chapter against the governmental
unit, the suit is considered to be against the employee in the employee's
official capacity only. On the employee's motion, the suit against the
employee shall be dismissed unless the plaintiff files amended pleadings
dismissing the employee and naming the governmental unit as defendant
on or before the 30th day after the date the motion is filed.


Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (b), (e), (f) (Vernon 2005).

 Sotelo moved for a dismissal under subsections (a) and (f) of section 101.106
of the Texas Tort Claims Act. Because we find the application of section 101.106(f)
to be dispositive, we address it solely.

 To be entitled to a dismissal under section 101.106(f), a defendant must show
that the plaintiff's suit (1) was based on conduct within the general scope of the
defendant's employment with a governmental unit and (2) could have been brought
under the Texas Tort Claims Act against that governmental unit. Williams, 199
S.W.3d at 466 (citing Phillips v. Dafonte, 187 S.W.3d 669, 675 (Tex. App.--Houston
[14th Dist.] 2006, no pet.)). Here, Kamel seeks to pursue Sotelo individually as well
as UTHSCH.

 The first component of the test actually encompasses two inquiries: whether
the individual defendant was an employee of a governmental unit and whether she
was acting in the scope of that employment at the relevant time. See Poland v.
Willerson, No. 01-07-00198-CV, 2008 WL 660334, at *4 (Tex. App.--Houston [1st
Dist.] March 13, 2008, pet. denied); Turner v. Zellers, 232 S.W.3d 414, 417 (Tex.
App.--Dallas 2007, no pet.). Subsection (f) provides "a procedure for dismissing
government employees and substituting the governmental entity in cases in which
only employees were named as defendants," allowing "the government employee
whose conduct is alleged to have been within the scope of employment to force the
plaintiff to amend the suit and name the governmental entity as the sole defendant." 
Tejada v. Rowe, 207 S.W.3d 920, 924 (Tex. App.--Beaumont 2006, pet. filed). The
statute strongly favors dismissal of governmental employees. Johnson, 181 S.W.3d
at 785.IV. Discussion

 Kamel challenges the trial court's granting of Sotelo's dismissal motion under
section 101.106 of the Texas Tort Claims Act. (3) Tex. Civ. Prac. & Rem. Code Ann.
§ 101.106. Specifically, Kamel claims that, as a UTHSCH resident, Sotelo is not a
government employee for the purposes of the Texas Tort Claims Act.

 Section 101.001(2) of the Act defines "employee" as follows:

 "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.


Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2).

 Thus, the statutory definition requires control and paid employment to invoke
the Tort Claims Act's waiver of immunity. See Adkins v. Furey, 2 S.W.3d 346, 348
(Tex. App.--San Antonio 1999, no pet.).

 It is undisputed that UTHSCH is a governmental unit pursuant to the Act. It
is also undisputed that Sotelo is a medical resident. However, Kamel contends that
Sotelo has not established that she was in UTHSCH's "paid service" on the date of
Kamel's surgery, and therefore Sotelo is not entitled to a dismissal. To support his
claim that Sotelo is not an employee of UTHSCH within the meaning of the Act, 
Kamel notes that Sotelo's paycheck is from the University of Texas System Medical
Foundation (the "Foundation"), rather than from UTHSCH. Kamel argues that the
appellees failed to establish that the Foundation and UTHSCH are the same entity and
that they are, in fact, separate entities because the Foundation is not listed as an entity
or institution comprising the University of Texas System under section 65.02 of the
Texas Education Code. (4) See Tex. Educ. Code Ann. § 65.02 (Vernon 2005). Thus,
because Sotelo's paycheck is issued by the Foundation, rather than UTHSCH, Kamel
asserts that Sotelo was in the paid service of the Foundation at the time of Kamel's
surgery.

 For her part, Sotelo asserts that she was a UTHSCH employee during the
relevant time period. In support of this, Sotelo executed an affidavit indicating that
she was "employed by the University of Texas Health Science Center at Houston"
during Kamel's treatment and that medical care to Kamel "was provided in the course
and scope of my employment with the University of Texas Health Science Center at
Houston." (5) Attached to Sotelo's affidavit was a copy of her paycheck and her
curriculum vitae. Sotelo's affidavit did not assert that she was compensated for her
service by UTHSCH. As to the issue of her compensation, Sotelo testified during her
deposition as follows:

 Q: What is University of Texas Medical - I'm sorry. 
University of Texas System Medical Foundation? What is
that?

 

 . . . .


 A: I am not the person to ask that question. I don't work for
the people that make the names. I don't know.

 

 Q: But didn't you sign a contract with the University of Texas
System Medical Foundation?

 

 A: As far as I know, I signed a contract with the University of
Texas, and the System Foundation. I'm not sure what that
is. Part of the University of Texas.

 . . . . 


 Q: . . . What about your paycheck? Do you ever receive a pay
check from the University of Texas Health Science Center
at Houston?

 

 A: I'm not sure what it says on my paychecks. They just go
straight to the bank.


 . . . .

 

 Q: Okay. Have you ever received a paycheck that said
University of Texas Health Science Center on it?

 

 A: Like I said before, I'm not sure where my paychecks come
from. I have direct deposit. I don't look at them. I don't
know, but I know they come from the University of Texas
is my understanding.

 In addition to Sotelo's testimony that she was paid by the University of Texas
during her residency, Sotelo relies on Knizel v. Bozarth, No. 04-06-00242-CV, 2007
WL 1481428, at *3 (Tex. App.--San Antonio May 23, 2007, no pet.), for the
proposition that a medical resident is an employee of a governmental unit for the
purposes of the Act. In that case, Knizel underwent knee replacement surgery at
University Hospital performed by Peter Holmes, M.D., and Gordon Bozarth, M.D. 
Id. at *1. At the time, Bozarth was a resident physician engaged in a cooperative
educational program with the University of Texas Health Science Center San Antonio
("UTHSCSA"); however, University Hospital, part of the University Health System,
paid Bozarth's salary. Id. After experiencing complications from the procedure,
Knizel brought suit against Holmes, Bozarth, and the University Health System. Id. 
Knizel argued that because Bozarth was paid by University Hospital, not UTHSCSA,
the Election of Remedies provision contained in section 101.106(f) was inapplicable
because Bozarth did not fit the definition of "employee" as set forth in the Act. Id.
at *1-2. The trial court, however, refused to apply the Act's definition and instead
applied the definition of "employee" contained in the Texas Health and Safety Code
(the "Code"), which provides that:

 A medical and dental unit, supported medical or dental school, or
coordinating entity, is a state agency, and a director, trustee, officer,
intern, resident, fellow, faculty member, or other associated health care
professional or employee of a medical or dental unit, supported medical
or dental school, or coordinating entity is an employee of a state agency
for purposes of Chapter 104, Civil Practice and Remedies Code, and for
purposes of determining the liability, if any, of the person for the
person's acts or omissions while engaged in the coordinated or
cooperative activities of the unit, school, or entity.


Id. at *2 (citing Tex. Health & Safety Code Ann. § 312.007(a) (Vernon 2001)). 

 The San Antonio Court of Appeals affirmed the trial court's judgment, holding
that "despite the definition of 'employee' contained within the Act, Bozarth is,
pursuant to the Code, a UTHSCSA employee for purposes of liability." Id. The
Court went on to agree with Bozarth that the Act and the Code can be read together
so that effect can be given to both and that the two provisions do not irreconcilably
conflict. Id. at *3. (6)

 Adopting the reasoning of our sister court, we hold in the instant case that, as
a medical resident of UTHSCH, Sotelo is an "employee" for the purposes of the Act. 
In so holding, we distinguish Murk v. Scheele. 120 S.W.3d 865, 867 (Tex. 2003),
relied on by appellant. In that case, Murk, a University of Texas faculty physician,
and Flanagas, a resident physician, argued that they were entitled to summary
judgment under section 101.106 of the Act after Scheele brought a medical
malpractice action against them. Id. at 866. With regard to Flanagas, the Texas
Supreme Court determined that because he was paid by the Bexar County Health
District, rather than the University of Texas, Flanagas was not in the "paid service"
of the University of Texas for the purposes of the Act and therefore, was not entitled
to summary judgment as an employee of the University of Texas. Id. at 867. Unlike
Flanagas, Sotelo testified that she received her paychecks from the University of
Texas and there is no evidence that Sotelo received payment from any other source
independent of the University of Texas System. (7) 

 Similarly, in Adkins v. Furey, also relied upon by appellant, Furey, an operating
room technician, sued Dr. Adkins, a resident at the University of Texas Health
Science Center, for shooting a staple into her arm while Furey was assisting Adkins
with a cesarean delivery. 2 S.W.3d 346, 347 (Tex. 1999). The issue arose as to
whether Adkins, in performing the cesarean procedure, did so as an employee of
UTHSC or as an employee of the Bexar County Hospital District. Id. The Texas
Supreme Court held that Adkins did not conclusively establish that he was in the
University's "paid service" in part because the District paid Adkins an annual stipend
and provided Adkins's benefits. Id. at 348-49. Again, there is no similar evidence
in the instant case that Sotelo received benefits from any source other than the
University of Texas at the time of Kamel's surgery.

 Based on the foregoing reasons, we hold that the trial court did not err in
granting Sotelo's motions to dismiss the claims against her. Accordingly, appellant's
issues are overruled.

 V. Conclusion


 We affirm the judgment of the trial court.

 

 Davie L. Wilson

 Justice


Panel consists of Justices Taft, Bland, and Wilson. (8)



1. The trial court subsequently severed the claims against Dr. Sotelo.
2. A unit of state government is immune from suit and liability unless the state consents. 
Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Governmental
immunity from suit defeats a trial court's subject-matter jurisdiction and is properly
asserted in a plea to the jurisdiction. Id. Generally, a party suing a governmental
entity must establish consent to sue, which may be alleged by reference either to a
statute or to express legislative permission. See Mo. Pac. R.R. Co. v. Brownsville
Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970). The Texas Tort Claims Act
waives immunity from liability and suit in three areas: (1) property damage and
personal injury caused by the use of publicly owned automobiles (section 101.021(1));
(2) personal injury caused by a condition or use of tangible personal or real property
(section 101.021(2)); and (3) claims arising out of premises defects (section 101.022). 
Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021-101.025 (Vernon 2005); see Tex.
Dept. of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 225 (Tex. 2004); Dallas
County v. Wadley, 168 S.W.3d 373, 376 (Tex. App.--Dallas 2005, pet. denied). In
his second amended petition, Kamel alleged that UTHSCH waived its immunity
because Dr. Wang negligently "used tangible personal property, namely a scalpel
and/or other surgical instruments to remove plaintiff's right testicle." Cf. Williams,
199 S.W.3d at 466-67 (holding medical negligence not encompassed by limited
waiver of sovereign immunity under Act.)
3. Kamel disputes that Sotelo is a government employee under two issues. However,
because both Kamel's issues are substantially similar, we address them in
conjunction.
4. Kamel also points to the Foundation's Articles of Incorporation and Franchise Tax
Certificate as evidence that the Foundation and UTHSCH are separate entities. 
Because these documents have not been made part of the appellate record, we decline
to consider them. See Bencon Management & General Contracting, Inc. v. Boyer,
Inc. 178 S.W.3d 198, 210 (Tex. App.--Houston [14th Dist.] 2005, no pet.) (holding
appellate courts may not consider matters outside appellate record); see also Crossley
v. Staley, 988 S.W.2d 791, 794 (Tex. App.--Amarillo 1999, no pet.) (holding
appellate court may consider only evidence presented to trial court, not documents
presented for first time on appeal.)
5. Sotelo's curriculum vitae was also offered into evidence, however it indicates only
that Sotelo is a medical resident of UTHSCH and does not reflect her status as a paid
employee of either UTHSCH or the Foundation.
6. As Sotelo correctly notes, section 58.001 of the Texas Education Code also supports
the conclusion that medical residents are government employees for the purposes of
the Act. That section provides:


 The legislature finds that it will improve the quality of the
delivery of medical care to the citizens of this state and,
therefore, that it will be in the public interest of this state for the
resident physicians being educated, trained, developed, and
prepared, for a career in medicine by the schools of medicine in
the University of Texas System . . . to be compensated by those
schools while the resident physicians are undergoing education,
training, development, and preparation.


 Tex. Educ. Code Ann. § 58.001 (Vernon 2006).

7. More specifically, although there is evidence that Sotelo's pay stubs reference the
Foundation, there is no evidence to suggest that the Foundation is a separate entity
from UTHSCH or otherwise independent from UTHSCH or the University of Texas
System. Flanagas, on the other hand, was paid by the Bexar County Health District,
an entity entirely distinct from the University of Texas System.
8. The Honorable Davie L. Wilson, retired Justice, First Court of Appeals, participating
by assignment.