**John Christopher FRANKA, M.D. and Nagakrishna Reddy, M.D., Appellants,**

v.

**Stacey VELASQUEZ and Saragosa Alaniz, Both Individually and as Next Friends of their Minor Child, Saragosa Mario Alaniz, Appellees.**

No. 04–06–00190–CV.

Court of Appeals of Texas, San Antonio.

Sept. 6, 2006.

Rehearing Overruled Sept. 29, 2006.

Rehearing Overruled Jan. 3, 2007.

Karen R. Roberts, Rosemary L. Hollan, Hollan Law Firm, P.C., Thomas H. Crofts, Jr., Crofts & Callaway, P.C., San Antonio, for appellants.

Gene S. Hagood, Hagood & Neumann, L.L.P., Alvin, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

John Christopher Franka, M.D. and Nagakrishna Reddy, M.D. appeal the trial court's orders denying their motion for summary judgment of substitution or dismissal. Franka and Reddy contend that the trial court erred in denying their motion because they were entitled to be dismissed from the underlying cause pursuant to section 101.106(f) of the Texas Civil Practice and Remedies Code. Because we hold that Franka and Reddy failed to establish that the underlying lawsuit could have been brought against the University of Texas Health Science Center, we affirm the trial court's orders.

Stacey Velasquez and Saragosa Alaniz ("Alaniz") filed the underlying lawsuit seeking damages for injuries sustained by their minor son, Saragosa Mario Alaniz ("Saragosa"), during his delivery. Saragosa's delivery was complicated by shoulder

---

dystocia.[1] The petition alleged that Reddy and Franka, who were the physicians performing the delivery, "committed acts and/or omissions that constitute medical negligence and malpractice that, singularly or in combination, proximately caused the injuries and damages sustained by Stacey Velasquez and Saragosa Alaniz."

Franka and Reddy moved to require the plaintiffs to substitute UTHSC as the defendant and to dismiss the lawsuit against them individually under section 101.106(f) of the Code which provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) (Vernon 2005). Velasquez and Alaniz responded that the trial court should deny the motion because Franka and Reddy failed to establish that: (1) Reddy was an employee of UTHSC; and (2) the suit could have been brought against UTHSC. Velasquez and Alaniz also responded that substitution under section 101.106(f) required UTHSC's consent under section 101.106(b) of the Code.[2]

Franka and Reddy contend that the suit could have been brought against UTHSC because the injuries were caused by the use of tangible personal property during the delivery, specifically a vacuum extractor. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 2005) (waiving immunity for personal injury caused by the use of tangible personal property). In making this assertion, Franka and Reddy rely on an isolated reference in both the progress notes regarding the delivery and the expert report filed by Velasquez and Alaniz. This contention ignores that the progress notes, the expert report, and the deposition testimony of Franka and Reddy all establish that the vacuum extractor was used to deliver Saragosa's head. After the head was delivered, the vacuum extractor was removed, and a number of efforts were made to dislodge and deliver Saragosa's shoulder including: (1) downward traction; (2) the McRoberts maneuver and superpubic pressure; (3) a maneuver consistent with the Rubin maneuver; (4) the Woods screw maneuver; and (5) downward traction by both Franka and Reddy. During the final maneuver, Reddy heard a snap as Saragosa's shoulder delivered. Each of these maneuvers only involved the use of the hands of Franka, Reddy, and the nurses present.

Assuming, without deciding, that the expert report could be considered,[3] the expert lists four specific departures from the standard of care: (1) "Failure of Dr. Red-

---

1. Shoulder dystocia occurs when one of the baby's shoulders becomes stuck behind the pubic bone. See Morrell v. Finke, 184 S.W.3d 257, 267 (Tex.App.-Fort Worth 2005, pet. filed).

2. We do not reach the issues of whether Reddy was an employee of UTHSC or whether the applicability of section 101.106(f) is dependent upon the consent of UTHSC because

the resolution of those issues is not necessary to the final disposition of the appeal. TEX. R.APP. P. 47.1.

3. The trial court sustained a hearsay objection and only permitted the report to be considered for purposes other than the truth of the matter asserted.

dy and Dr. Franka to recognize the multiple risk factors for shoulder dystocia and Erb's Palsy in Stacey Velasquez and to prepare accordingly"; (2) "Dr. Franka' and Dr. Reddy's use of continuous traction and more than a gentle force on the head and neck of the baby after the shoulder dystocia was recognized leading to damage to the brachial plexus, Erb's Palsy and fractured clavicle"; (3) "Failure of Drs. Franka and Reddy to use proper alternative maneuver to free the trapped anterior shoulder"; and (4) "Failure of Drs. Franka and Reddy to provide Stacey Velasquez with adequate informed consent prior to the use of the vacuum extractor to force the delivery." The expert opines, "For the reasons referenced above, had Dr. Reddy and Dr. Franka recognized the multiple risk factors for shoulder dystocia and Erb's Palsy and prepared accordingly, had they not used continuous traction and more than gentle force to decompress the shoulder dystocia—rather, using the referenced alternative maneuvers serially or repeatedly as needed or performed a Caesarean section after adequate informed consent to Stacey Velasquez, Saragosa's shoulder fracture and resulting brachial plexus injury and Erb's Palsy would have been avoided." Franka and Reddy focus exclusively on the reference to the vacuum extractor in the expert report; however, such a narrow reading of the expert's report ignores its substance.

■ Having reviewed the petition and the evidence presented, we hold that the claim asserted against Franka and Reddy is, "quite simply, a claim of medical negligence and is not encompassed by the Texas Tort Claim Act's limited waiver of sovereign immunity." *See Williams v. Nealon*, 199 S.W.3d 462, 465 (Tex.App.-Houston [1st Dist.] 2006, no pet. h.). "Because medical negligence is the basis for [the] claims against the doctors, the doctors cannot meet the second requirement of section 101.106(f). That is, the doctors have not shown that [the] claims could have been brought against [UTHSC] under the Texas Tort Claims Act." [4] *Id.* at 466; *see also Phillips v. Dafonte*, 187 S.W.3d 669, 676–77 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (holding dismissal not proper under section 101.106(f) where substance of claims was intentional or negligent failure to communicate diagnosis); *Villasan v. O'Rourke*, 166 S.W.3d 752, 760–61 (Tex. App.-Beaumont 2005, pet. filed) (noting a governmental agency is generally immune from medical negligence complaints and complaint alleging negligent exercise of medical discretion against government-employed medical professional should be made against medical professional alone, and not the governmental agency).

In their reply brief, Franka and Reddy cite *Armendarez v. Tarrant County Hosp. Dist.*, 781 S.W.2d 301, 305 (Tex.App.-Fort Worth 1989, writ denied), to assert that "a

**4.** The requirement that the suit "could have been brought under this chapter" enables this court to draw a distinction between suits against a doctor in his individual capacity as opposed to his official capacity. *Cf. Waxahachie Ind. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 786–87 (Tex.App.-Waco 2005, pet. filed) (noting omission of "under this chapter" requirement made section 101.106(b) applicable to employees sued in their individual capacities); *see also Meroney v. City of Colleyville*, 200 S.W.3d 707, 712 (Tex.App.-Fort Worth, 2006, no pet.) (noting defendant may force plaintiff to proceed in suit against governmental entity alone if suit is initially filed against the employee when the employee is alleged to have acted solely in his or her official capacity). Requiring substitution under section 101.106(f) when the employee is sued in his or her official capacity as opposed to his or her individual capacity is logical because a suit against an employee in his or her official capacity seeks to impose liability on the governmental unit itself. *Meroney*, at 713.

claim based in part on the use of a vacuum extractor for child delivery rather than a surgical cesarean procedure *is* a claim based on the use of tangible personal property and thus *is* within the Tort Claim Act's waiver of immunity." *Armendarez*, however, held only that some summary judgment evidence was presented to raise a fact issue as to whether the child's injury was negligently caused by the use of tangible personal property. 781 S.W.2d at 302. Given the fact issue, summary judgment on the basis of immunity was held to be erroneous. *See id.* The dissenting opinion in that case raises serious questions regarding whether the vacuum extractor would actually have been found to have caused the injury such that immunity would have been waived:

> Only the bruise to Allen's head was arguably caused by the vacuum extractor; the brachial plexus injury was not. Movement of the child, aided by the vacuum extractor did not *cause* the shoulder injury. The birth of the child through a narrow birth canal caused the injury to the child's shoulder. To say the vacuum extractor caused the shoulder injury is as baseless as saying the stabbing of a child who happened to be on a school bus was caused by the use of a motor vehicle merely by virtue of the child's presence on the bus. .... As other courts have realized, governmental immunity is not waived every time a government employee and a piece of tangible personal property are combined.

*Armendarez*, 781 S.W.2d at 308 (Meyers, J., dissenting) (emphasis in original).

 Franka and Reddy appear to be suggesting that the raising of a fact issue as to whether the suit "could have been brought under this chapter against the governmental unit" should be sufficient to enable a trial court to dismiss employees under section 101.106(f). Such a suggestion is untenable in view of its potential result. If the employees were dismissed and immunity was ultimately held not to have been waived, the plaintiffs would be left without a remedy. Just as a plea to the jurisdiction cannot be granted, thereby resulting in the dismissal of a lawsuit, when a fact issue exists, *see Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex.2004), a trial court also is not permitted to dismiss employees from a lawsuit under section 101.106(f) if a fact issue exists with regard to whether the governmental unit's immunity is waived. When such a fact issue exists, the employees have failed to establish that the suit "could have been under this chapter against the governmental unit." TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) (Vernon 2005).

The trial court's orders are affirmed.