

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00074-CV

_____


LESLEE LANPHIER, R.N., AND
REBECCA FRANCIS, R.N., Appellants

V.

TANIA AVIS, A/K/A TANIA GREER, Appellee


On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 06-C-594


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Nurses Leslee Lanphier, R.N., and Rebecca Francis, R.N., appeal from the trial court's denial of their motion to dismiss Tania Avis's (a/k/a Tania Greer) claims against them. The nurses rely on Section 101.106(f) of the Texas Civil Practice and Remedies Code in maintaining that the trial court should have dismissed Avis's claims since those claims could have been brought against the nurses' employer, a governmental entity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (Vernon 2005). We disagree with their position and affirm the trial court's order denying the nurses' motion to dismiss.

## I. JURISDICTION

As a preliminary consideration, we note that the parties have raised the issue of this Court's subject-matter jurisdiction to review this interlocutory order. We also note an express disagreement exists among intermediate courts of appeals pertaining to the issue of whether this Court would possess the jurisdiction to review this order. The courts concluding that jurisdiction exists look to Section 51.014(a)(5) of the Texas Civil Practice and Remedies Code, which provides that "[a] person may appeal from an interlocutory order of a district court, county court at law, or county court that . . . denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5) (Vernon Supp. 2007). The concern surrounding the application of Section 51.014(a)(5) to the instant case is the obvious distinction between the

2

procedural vehicles involved; this appeal does not come to us as an appeal from the denial of a motion for summary judgment, but as an appeal from an order denying a motion to dismiss.[1]

The Houston-Fourteenth court addressed this issue and concluded that Section 51.014(a)(5) is not limited to cases involving only one specific procedural vehicle. *See Phillips*, 187 S.W.3d at 674. In arriving at this conclusion, *Phillips* relied on *Texas Department of Criminal Justice v. Simons*, 140 S.W.3d 338 (Tex. 2004). *Simons* construed a different subsection of Section 51.014(a), i.e., subsection (a)(8), which provided for interlocutory appeals in which a governmental unit's plea to the jurisdiction was denied. *Id*. at 349.

The *Simons* court concluded that Section 51.014(a)(8) was not limited to the review of cases in which the trial court denied a claim of sovereign immunity through one particular procedural vehicle. In doing so, it stated that, "[A]n interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment." *Id*. Rather, *Simons* directed courts to look to the substance of the argument rather than the title of the procedural vehicle in a "substance

---

[1]The Houston-Fourteenth court also specifically addressed whether Section 101.106(f) confers immunity and concluded that it does. *See Phillips v. Dafonte*, 187 S.W.3d 669, 672–73 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (relying on the reasoning in *Newman v. Obersteller*, 960 S.W.2d 621, 622 (Tex. 1997) in which the Texas Supreme Court construed an earlier, differently-worded version of Section 101.106(f) as an immunity statute because it rendered a defendant immune from further action in matter). *But see Rogers v. Bonnette*, No. SA-04-CA-0118-XR, 2005 U.S. Dist. LEXIS 13497 (W.D. Tex. July 5, 2005, order), in which the court suggested that the rewriting of the statute eliminated the language from which the *Newman* court concluded that the statute conferred immunity to governmental employees.

3

over form" kind of reasoning. *Id. Phillips* pointed out the obvious distinctions between subsections (a)(5) and (a)(8), but noted that the fundamental issue was the same: essentially, whether jurisdiction over an interlocutory appeal was affected by the type of vehicle used to assert immunity. *Simons* appears to answer that question in the negative.

This position is reflected elsewhere as well. The Texas Supreme Court interpreted Section 51.014 as granting jurisdiction for the appeal irrespective of the procedural vehicle employed in asserting a claim of immunity: "If the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature has provided that an interlocutory appeal may be brought." *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Sister courts have expressly agreed with *Phillips*. *See Kanlic v. Meyer*, 230 S.W.3d 889 (Tex. App.—El Paso 2007, pet. filed); *Tex. Dep't of Agric. v. Calderon*, 221 S.W.3d 918 (Tex. App.—Corpus Christi 2007, no pet.); *Walkup v. Borchardt*, No. 07-06-0040-CV, 2006 Tex. App. LEXIS 10333, at *1 n.1 (Tex. App.—Amarillo Nov. 30, 2006, no pet.) (mem. op.).

The Dallas court, however, has recently taken the opposite stance on this jurisdictional issue. *See Hudak v. Campbell*, 232 S.W.3d 930, 931 (Tex. App.—Dallas 2007, no pet.). First, the *Hudak* court correctly noted that Section 51.014(a), while granting limited jurisdiction to review interlocutory orders, should be strictly construed. The court then focused on the fact that the appellant sought review of a denial of a motion for summary judgment as specified in Section

4

51.014(a)(5). *See id.* In determining that the *Phillips* decision represented "an inappropriate extension" of the appellate court's statutory jurisdiction, the Dallas court emphasized that it looked beyond the simple title of the motion at issue in that case and examined "the nature of the motion," explaining that the motion at issue did not comply with the strict procedural safeguards associated with a motion for summary judgment. *See id.*

We are more persuaded by the reasoning in *Phillips* and the Texas Supreme Court's position in *Simons* and *Sykes*. The substance of the nurses' argument is based on an assertion of immunity by individual employees of a governmental unit, precisely the substance at which Section 51.014(a)(5) aims. The fact that the nurses followed the directive of the applicable provision of the statute (as it is worded) by asserting that claim in the form of a motion to dismiss should not preclude review of their claim of immunity. We conclude that we have jurisdiction to consider the nurses' interlocutory appeal pursuant to Section 51.014(a)(5).

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Identification of Parties

Lanphier and Francis were nurses at Atlanta Memorial Hospital (AMH), a governmental entity. Avis was an expectant mother in September 2004. When, at full term, she began experiencing labor pains accompanied by a high fever and nausea, she sought treatment at AMH, was admitted to the labor and delivery department, and was administered antibiotics. The AMH staff ceased hearing fetal heart tones after five to six hours of labor. A sonogram and, according to

medical records, a scalp electrode also failed to find any signs of fetal cardiac activity.[2]

Approximately eight hours after Avis arrived at the hospital, a stillborn fetus was delivered by

cesarean section.

### B.    Claims Against the Nurses

Avis filed suit against several parties on September 15, 2006, alleging healthcare liability

claims pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code. Her petition set forth

the following facts:

> Tania Greer was a 27 year old lady without any living children when she
> found out she was pregnant. She received her prenatal care at Ellington Memorial
> Clinic. On September 15, 2004, she was admitted to Atlanta Memorial Hospital
> because she was in labor and was leaking amniotic fluid. She was approximately 40
> weeks gestation. She had vomited at home and had a fever of 100.6. Her fever went
> up to 103.7. Her physicians (Dr. Matthew Hogan and Dr. Richard Hozdic, II, M.D.)
> and nurses (Leslee Lanphier, R.N. and Rebecca Francis, R.N.) allowed her labor to
> proceed over the next eight (8) hours even though her fetal monitor strip showed that
> her baby was in distress. They never inserted a fetal scalp electrode. At
> approximately 8:50 a.m., the nurses were unable to locate fetal heart tones. A
> cesarean section surgery was performed by Dr. Hogan and Dr. Hozdic, and Tania
> Avis was informed that her baby was dead. A timely delivery would have allowed
> Tania Greer's baby to survive.

In pertinent part, Avis sued Lanphier and Francis for damages based on alleged negligence and

failure to properly carry out their nursing responsibilities. Specifically, Avis alleged:

> By reason of the facts set forth above, Defendant LANPHIER was negligent
> in failing to properly carry out her nursing responsibilities to Plaintiff and/or her baby
> in accordance with accepted standards of medical and/or nursing practice, thereby

---

[2]Avis alleges that the staff failed to employ the use of a fetal scalp electrode.

proximately causing injuries and damages to Plaintiff. Defendant LANPHIER'S negligence was solely due to her failure to act.

> . . . .

> By reason of the facts set forth above, Defendant FRANCIS was negligent in failing to properly carry out her nursing responsibilities to Plaintiff and/or her baby in accordance with accepted standards of medical and/or nursing practice, thereby proximately causing injuries and damages to Plaintiff. Defendant FRANCIS' negligence was solely due to her failure to act.

The nature of the claims against Lanphier and Francis is important because it will become central to the question whether Avis could have brought those claims against AMH.

## C.     Denial of Motion to Dismiss Pursuant to Section 101.106(f)

On December 27, 2006, Lanphier and Francis filed their motion to dismiss based on Section 101.106(f). Avis responded to that motion on February 21, 2007. The trial court heard the motion on February 22, 2007. On May 18, 2007, the trial court signed its order denying the nurses' motion to dismiss; in the very comprehensive order, the trial court concluded that Avis had failed to allege facts which would invoke the waiver of AMH's sovereign immunity. Appealing that order, the nurses maintain that they are entitled to dismissal pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f).

7

## III.  APPLICABLE LAW

### A.  Section 101.106(f)

The section on which Lanphier and Francis rely in their position provides as follows:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f).  To be entitled to dismissal under Section 101.106(f), a defendant must show that the plaintiff's suit both (1) was based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought under the Texas Tort Claims Act (TTCA) against that governmental unit.[3]  *See Williams v. Nealon*, 199 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2006, pet. filed); *Phillips*, 187 S.W.3d at 675.  Here, we focus on the latter of the two requirements of Section 101.106(f): whether Avis could have brought this suit against AMH.  We must, therefore, examine the TTCA's

---

[3]Some cases have addressed Section 101.106(f) in three distinct parts: 1) was the individual an employee of a governmental unit, 2) was the employee acting within the scope of his or her employment, and 3) could the plaintiff have brought the suit against the employer.  *See Turner v. Zellers*, 232 S.W.3d 414, 417 (Tex. App.—Dallas 2007, no pet.).

Neither party challenges the issues concerning AMH's status as a governmental unit. Both parties seem to agree that AMH operates under Chapter 262 of the Texas Health and Safety Code and is a municipal hospital authority.  The parties seem to passively agree on appeal that both Lanphier and Francis were acting within the scope of their employment.  Although it appears the parties disagreed on this matter at trial, any argument on the issue is not well developed in the briefs to this Court.

application to these facts to determine whether Avis could have brought her suit against the nurses' employer, AMH.

**B.      Connection to Texas Tort Claims Act:  Section 101.021(2)**

Lanphier and Francis contend that Avis could have relied on Section 101.021 of the Texas Civil Practice and Remedies Code to bring these claims against AMH.  They contend that Avis's allegations go to the nurses' improper reading and interpretation of the instruments, and, in doing so, allege misuse of tangible personal property, a misuse for which Avis could have sued AMH under the TTCA.  Section 101.021 imposes liability against a governmental unit for personal injury or death caused by a condition or use of tangible or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005).  To best determine what qualifies as condition or use of tangible personal property, we have reviewed several cases that have examined Sections 101.021(2) and 101.106(f), observing that petitions seeking discretionary review of a number of those cases are pending in the Texas Supreme Court.

**C.      Determining Whether Injury Was Caused by Use of Tangible Property**

Many cases examining Section 101.106(f) rely on *Phillips*, in which a breast cancer patient sued for breach of fiduciary duty, fraudulent concealment, and negligence.  187 S.W.3d at 672.  The defendant physicians moved to dismiss pursuant to Section 101.106(f).  *Id.*  After concluding that Section 51.014(a) permitted the court to exercise jurisdiction over the appeal, the Houston-

9

Fourteenth court reviewed the trial court's denial of the physicians' motion to dismiss by determining whether the plaintiff could have brought suit against University of Texas Medical Branch (UTMB) pursuant to Section 101.021(2)'s waiver of immunity for injuries caused by use of tangible property. *Id.* at 676.

The court concluded that the substance of the plaintiff's claims was the physicians' intentional or negligent failure to communicate a diagnosis to her. *Id.* at 676–77. Relying on *University of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994), and *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 33 (Tex. 1983), the court pointed out that information about a medical condition is not considered tangible property. *Phillips*, 187 S.W.3d at 677. Since the physicians failed to show that the plaintiff's suit could have been brought against the state hospital, the trial court did not err by denying their motion to dismiss. *Id.*

In *Williams*, the Houston-First court reversed the trial court's order granting the physicians' motion to dismiss, concluding that the physicians failed to show that the plaintiff could have brought the suit against the physicians' employer, UTMB:

> In his petition, Williams alleges that "Defendants violated the duty owed to Plaintiff to exercise the ordinary care and diligence exercised by other physicians and/or health care providers in the same or similar circumstances in connection with the subject treatment and was [sic] negligent." *Such a claim is, quite simply, a claim of medical negligence and is not encompassed by the Texas Tort Claim Act's limited waiver of sovereign immunity*.

199 S.W.3d at 466 (emphasis added). Since medical negligence was the basis of the claims against the physicians, the plaintiff could not have brought the suit against UTMB under the TTCA. *Id.* In

10

support of its conclusion, the Houston-First court expressly aligned its position with that of the Houston-Fourteenth court's position in *Phillips*. *Id.* at 467.

The facts in *Franka v. Velasquez*, 216 S.W.3d 409, 410–11 (Tex. App.—San Antonio 2006, pet. filed), dealt with injuries sustained by an infant during a complicated delivery. After having reviewed the petition and the evidence presented, the San Antonio court affirmed the trial court's denial of the physicians' motion to dismiss pursuant to Section 101.106(f). *Id.* at 413. The court pointed to the expert report's note of specific departures from the standard of care in the following respects: (1) failure to recognize risks of disorder, (2) use of continuous traction after problems were detected, (3) failure to use proper maneuvers, and (4) failure to provide the mother with sufficient information regarding the risks in the use of a vacuum extractor. *Id.* at 411–12.

Although the physicians argued that the child's injuries were caused by use of tangible personal property (i.e., the vacuum extractor), the court was unconvinced, due to the fact that the vacuum extractor was not used after the head was delivered and all of the evidence showed that the injuries to the child occurred after the head was delivered. *Id.* at 411. After the head was delivered using the vacuum extractor and during the time at which the injuries were sustained, the physicians used only their hands to deliver the infant. *Id.* Ultimately, the *Franka* court concluded that the claims against the physicians were claims of medical negligence and, therefore, could not be brought against the hospital under the TTCA; accordingly, the physicians were not entitled to dismissal under Section 101.106(f). *Id.* at 412.

11

In *Clark v. Sell*, 228 S.W.3d 873 (Tex. App.—Amarillo 2007, pet. filed), the plaintiff sought damages on behalf of a patient who sustained injuries to his arm as he lay on that arm for a prolonged, drug-induced sleep. The plaintiff alleged that the injuries were caused because the three nurses in question did not "arouse," "fully assess," or "periodically turn" the patient. *Id.* at 875. The Amarillo court explained that the suit could not be brought under any available waiver provision of the TTCA:

> In other words, they supposedly neglected to perform certain medical services, and that neglect resulted in his injuries. Given the nature of her allegations, we see no nexus between the injuries in dispute and a premises defect, motor vehicle, or condition or use of property . . . .

*Id.* Important in the *Clark* opinion is the apparent absence of a nexus between the use of tangible personal property and the injury which was sustained. It is not sufficient that a vehicle, premises defect, or piece of property simply be involved in some way; rather, one or another of these must be a proximate cause of the underlying injury. *Id.* at 874–75 (citing *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998), to support proposition that the property must proximately cause the injury for immunity to be waived). Since the nurses failed to satisfy the requirements of Section 101.106(f), the court affirmed the trial court's denial of the nurses' motion to dismiss. *Clark*, 228 S.W.3d at 875.

When the parents of a deceased infant sued the physician, they alleged that the child's death was caused by the physician's failure to timely diagnose and treat the pulmonary hypertension which had been revealed by the diagnostic tests performed on the child. *Turner*, 232 S.W.3d at 418. They

12

did not, as the Dallas court pointed out, contend that those tests were negligently performed. *Id.* The Dallas court rejected the physician's argument that, because he used tangible personal property in connection with the infant's diagnosis or treatment, the healthcare liability claim was caused by the use of tangible personal property such that it could have been brought against his employer under the TTCA. *Id.* at 418–19. The court concluded that the parents did not allege that their child was injured or killed by the physician's negligent use of tangible property. *See id.* at 419. Instead, the court concluded, the parents' allegations related only to the physician's diagnosis and treatment of the pulmonary hypertension. Therefore, the TTCA would not waive immunity for such claims to be brought against a governmental unit. *Id.*

We see allegations that would fall within the TTCA's waiver in *Tejada v. Rowe*, 207 S.W.3d 920 (Tex. App.—Beaumont 2006, pet. filed), a case which involved medical care during the delivery of twins. *Id.* at 922. The trial court granted the physicians' motion to dismiss pursuant to Section 101.106(f). *Id.* During the thirty-fourth week of her pregnancy, Tejada was admitted into Park Place Hospital and diagnosed with pregnancy-induced hypertension and gestational diabetes. *Id.* Six days later, she was transferred to UTMB where she was given a drug to augment her labor. *Id.* Both children were delivered with the use of forceps and both were subsequently diagnosed with cerebral palsy.[4] *Id.*

---

[4]In addition, there were other complications with the delivery of the second infant. The opinion explains that she was delivered "by internal podalic version, breech extraction and forceps for the aftercoming head." *Tejada*, 207 S.W.3d at 922.

13

The mother's allegations were several:

> Tejada's petition asserted that Rowe and DeMay were negligent in failing to appropriately monitor and evaluate the fetal heart rates; failing "to accurately assess and intervene in a timely manner;" "failing to identify risk factors during labor;" "failing to monitor maternal and/or fetal condition;" "[i]nadequate patient assessment;" "failing to notify physician appropriately and/or in a timely manner;" "failing to properly and adequately supervise the nursing staff . . . ;" "failing to assign and provide an adequate nursing staff . . . ;" "failing to use sound nursing judgments;" and "permitting a resident or intern to deliver the bab[ies] without proper instruction, training or supervision[.]"

*Id.* One expert report attributed the cerebral palsy to the "mechanical trauma and perinatal hypoxia suffered by them during delivery." *Id.* Another expert asserted that the physicians

> were negligent in performing a forceps rotation on [one infant]; failing to perform a cesarean section; failing to perform an episiotomy; failing to utilize appropriate anesthesia; performing a traumatic delivery; inappropriately responding to fetal heart decelerations and the presence of meconium; performing a breech extraction "with internal podalic version and forceps . . ." [on the other infant]; and augmenting Tejada's labor with Pitocin.

> . . . .

> The use of Pitocin increased the force of the uterine contractions to which these babies were being subjected. Pitocin should not have been used, nor should its dosage have been increased. In fact, its use should have been stopped.

*Id.* at 922–23. The Corpus Christi court focused on the expert's assertions that the injuries were caused by the use of the drug Pitocin and by the use of forceps during the deliveries. *Id.* at 925. Both Pitocin and forceps are tangible personal property and, therefore, claims of injuries caused by them would fall within Section 101.021(2)'s waiver of sovereign immunity. *Id.* The trial court did not err by granting the physicians' motion to dismiss. *Id.*

14

We also look to *Kelso v. Gonzales Healthcare Systems*, 136 S.W.3d 377 (Tex. App.—Corpus Christi 2004, no pet.). *Kelso* is in a different procedural posture than many of the preceding cases because it deals with a plea to the jurisdiction in a case brought against the governmental unit rather than its employees. 136 S.W.3d at 380. *Kelso* is valuable to our analysis, however, since we must determine, here, whether Avis could have brought suit against AMH. In dealing directly with Section 101.021(2), *Kelso* illustrates what must be alleged in order to bring a suit against a governmental unit under Section 101.021(2) for injuries allegedly caused by the condition or use of tangible property.

The relevant claims in *Kelso* involved delayed treatment following results of an electrocardiograph (EKG) machine which indicated the patient was suffering from a heart attack. *Id.* The patient sued, alleging that the nearly two-hour delay in treatment caused permanent injuries and that the injuries were caused by the misuse of tangible personal property, i.e., the EKG machine. *Id.* After the trial court granted the hospital's plea to the jurisdiction, the patient appealed.

The Corpus Christi court pointed out that, although "use" is undefined in the statute, the term "use" has been characterized as "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* at 381–82 (citing *Salcedo*, 659 S.W.2d at 33). The court also discussed the Texas Supreme Court's distinctions between claims involving the failure to use tangible property and those involving the condition or use of tangible property. *Id.* at 382. Those claims involving failure to use tangible property will not waive sovereign immunity, while claims involving the condition

15

or use of tangible property will effect a waiver. *Id.* (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).

The *Kelso* court concluded that the allegations, as they were, did not bring the claims under the waiver provisions of the TTCA since the plaintiffs made no affirmative allegations that the EKG machine was incorrectly used or that its results were erroneous. *Kelso*, 136 S.W.3d at 382. The court reasoned that it was the misuse of the information produced by the EKG machine rather than misuse of the device itself that represents the proximate cause of the injury. *Id.* If the EKG machine is correctly used, any misuse of the information generated by it does not waive immunity under Section 101.021(2); information is not tangible property within the meaning of Section 101.021(2). *Id.* The suit could not be brought against the hospital under the TTCA, meaning that the trial court properly granted the hospital's plea to the jurisdiction.

To illustrate the difficult distinctions to be made in this arena, we contrast *Kelso* with *University of Texas Medical Branch Hospital at Galveston v. Hardy*, 2 S.W.3d 607 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). In *Hardy*, the plaintiff alleged that the failure to properly monitor a cardiac monitor was the proximate cause of a patient's injuries and death. *Id.* at 608–09. While recovering from bypass surgery, the decedent "was connected to a cardiac monitor which was intended to monitor her heart's activity and signal an alarm if any problem occurred." *Id.* at 608. When the monitor signaled an alarm indicating heart stoppage, resuscitation efforts were not commenced until at least five minutes following the first alarm from the monitor. *Id.* at 608–09.

The doctors were able to revive the patient, but not before oxygen deprivation left the patient on life support with severe brain damage. *Id.* at 609. The patient never regained consciousness and was eventually removed from life support systems. *Id.*

The plaintiff brought a wrongful death and survival action against the hospital, alleging that the negligent use of the cardiac monitor was the proximate cause of the death of the decedent. *Id.* She alleged that the hospital's staff failed to properly oversee the monitor. *Id.* In affirming the trial court's denial of the hospital's plea to the jurisdiction, the court relied heavily on *Salcedo*, 659 S.W.2d at 33. The court concluded that the use of the cardiac monitor in *Hardy*, like the EKG machine in *Salcedo*, directly affected and impacted the person whose heart condition was being monitored. *See* 2 S.W.3d at 610. An important point seems to be that "[t]he cardiac monitor could only be effective . . . if it was properly monitored at all times." *Id.* The *Hardy* court continued: "Unfortunately, the person responsible for monitoring the cardiac monitor failed to do so, resulting in the death of the decedent from the very condition that the proper use of the cardiac monitor was intended to avoid." *Id.*

A careful study of *Kelso* and *Hardy* reveals what may be the critical distinction between the two cases. In *Kelso*, the device generated information from which the doctor then had to make a diagnosis and plan a course of treatment. The apparent misinterpretation of the information would not qualify as use of tangible property within the TTCA. In *Hardy*, however, the purpose of the monitor was not necessarily limited to generating information. Rather, the monitor in *Hardy* was

17

intended to signal complications and its purpose required that it be constantly monitored. In other words, the negligence in *Kelso* related to the proper interpretation, whereas the alleged negligence in *Hardy* was the failure to properly use the device for the very purpose it was intended. The distinction between the two fact circumstances seems so finite (an alarm on a monitor when a critical set of circumstances arises versus no alarm on an EKG machine to signal the examiner of the test results when irregularities are present) that the results appear to be in conflict. We believe the analysis in *Kelso* to be more persuasive.

## IV.     ANALYSIS

### A.     Standard and Scope of Review

We apply a de novo standard of review because the issue in this case ultimately goes to the issue of sovereign immunity, a question of law.[5] *See Sheth v. Dearen*, 225 S.W.3d 828, 831 n.2 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Sykes*, 136 S.W.3d at 638. The burden is on the movant under Section 101.106(f) to point to facts evidencing that plaintiff's suit could have been brought against the governmental unit. *Sheth*, 225 S.W.3d at 830; *Phillips*, 187 S.W.3d at 677; *Tejada*, 207 S.W.3d at 923. The primary sources of those facts are the plaintiff's pleadings; however, other evidence is proper if relevant to the issue of waiver of sovereign immunity. *Phillips*, 187

[5]Several courts of appeals have announced the general standard of review applicable to motions to dismiss: abuse of discretion. The Houston-Fourteenth court has taken issue with that standard. *See Sheth v. Dearen*, 225 S.W.3d 828, 831 n.2 (Tex. App. —Houston [14th Dist.] 2007, no pet.). *Sheth* concludes that the standard of review is dictated by the substance of the issue to be reviewed as opposed to the procedural vehicle through which that issue arrives at the court of appeals. *See Kanlic*, 230 S.W.3d at 892; *Sheth*, 225 S.W.3d at 831 n.2.

18

S.W.3d at 676–77; *Tex. Natural Res. Conservation Comm'n v.White*, 46 S.W.3d 864, 868 (Tex. 2001); *Franka*, 216 S.W.3d at 412. In determining whether Avis has alleged facts that support a finding that sovereign immunity would be waived as to AMH, we look at the substance of the pleadings rather than Avis's characterizations of her pleadings. *See Sheth*, 225 S.W.3d at 830.

**B.      The Substance of the Allegations Against the Nurses**

Avis's original petition claims that the nurses were negligent in failing to properly carry out their nursing responsibilities to Avis and her infant in accordance with accepted standards of medical and/or nursing practice. The petition limits the specific allegations against Lanphier and Francis to "negligence [as] solely due to [their] failure to act." Looking beyond these limitations and into the facts alleged in the petition (the record contains no expert report), we characterize the "real substance" of Avis's allegations against the nurses as follows:

> 1) "*[the] nurses . . . allowed her labor to proceed over the next eight (8) hours even though her fetal monitor strips showed that her baby was in distress*"

Arguably, Avis comes closest here to alleging facts that would qualify as use of tangible property for purposes of the application of the TTCA. However, unlike the plaintiff in *Hardy*, Avis does not allege that the nurses failed to use the monitor. That is, Avis does not allege that the nurses failed to watch the monitor or that they used the monitor improperly. Nor does she allege that the injuries to her infant were caused by a device used during delivery. Rather, her allegations seem to fall more in line with those in *Kelso* in that she alleges that the nurses should have taken alternate

19

actions based on the information generated by the monitor. No device used during the delivery is alleged to have caused the injury to Avis's infant, as was the case in *Tejada*.

Since Avis's allegations here are more accurately characterized as allegations that the nurses took the wrong course of action based on the information from the monitor, we reiterate that information is not treated as tangible property under the TTCA:

> While the paper on which doctors and nurses may record information about a patient's condition is tangible in that paper can be seen and touched, information itself is an abstract concept, lacking corporeal, physical, or palpable qualities. Information thus, is intangible; the fact that information is recorded in writing does not render the information tangible property.

*York*, 871 S.W.2d at 178–79; *see Phillips*, 187 S.W.3d at 676.

Further, it is not enough that tangible property is simply involved in some way during the course of treatment; there must be a nexus between the injury and the property. *See Miller*, 51 S.W.3d at 588; *Bossley*, 968 S.W.2d at 342–43; *Clark*, 228 S.W.3d at 875; *Kelso*, 136 S.W.3d at 382. We find the following observation helpful:

> [T]he mere use of tangible personal property by [the doctor] in connection with his diagnosis and treatment of [the patient] does not mean the State has waived sovereign immunity for any health care liability claim arising from that diagnosis and treatment. To hold otherwise would render a governmental unit subject to suit any time a physician employed by it picked up a tongue depressor and examined a patient.

*Turner*, 232 S.W.3d at 419.

2) *the nurses "never inserted a fetal scalp electrode"*

There is a factual dispute here. The record suggests that AMH staff did use a fetal scalp electrode. The law is clear, nonetheless, that the failure to use a device is not misuse that would put the allegations within Section 101.021(2) of the TTCA. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996); *Miller*, 51 S.W.3d at 587; *Kelso*, 136 S.W.3d at 382.

3) "*[a] timely delivery would have allowed [the] baby to survive*"

Here, Avis seems to suggest that the staff should have performed a cesarean section sooner. This decision relates only indirectly to the use of any property and is similar in nature to the allegation examined in *Williams* and described as "quite simply, a claim of medical negligence . . . not encompassed by the [TTCA]'s limited waiver of sovereign immunity." *Williams*, 199 S.W.3d at 466.

## V.    CONCLUSION

The real substance of Avis's allegation against the nurses does not concern use of tangible property and, therefore, falls outside Section 101.021(2)'s waiver of sovereign immunity. That said,

21

Avis could not have brought those claims against AMH, the nurses' employer. Since the nurses failed to establish that Avis could have done so, they failed to satisfy all elements of Section 101.106(f) and were not entitled to dismissal pursuant to that section. We overrule the nurses' contentions and affirm the trial court's denial of the nurses' motion to dismiss.

Bailey C. Moseley
Justice

Date Submitted:     October 31, 2007
Date Decided:       January 10, 2008