

**NUMBER 13-08-00590-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**WILMA REEDY, R.N.,**                                       **Appellant,**

**v.**

**ELIZABETH POMPA AND NICHOLAS POMPA, III,
AS PARENTS AND NEXT FRIENDS OF
ANNICA POMPA, A MINOR,**                      **Appellees.**

---

**On appeal from the 135th District Court of
DeWitt County, Texas.**

---

# O P I N I O N

**Before Justices Yañez, Rodriguez, and Benavides
Opinion by Justice Benavides**

In this interlocutory appeal, appellant, Wilma Reedy, R.N., appeals from the trial court's denial of her motion to dismiss under Texas Civil Practice and Remedies Code section 101.106(f) in favor of appellees, Elizabeth Pompa and Nicholas Pompa, III, as parents and next friends of Annica Pompa, a minor (collectively "the Pompas"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (Vernon 2005); *id.* § 51.014(a)(5) (Vernon 2008)

(authorizing an interlocutory appeal from an order that denies "a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state").[1] Under section 101.106(f), a trial court must dismiss a suit against an employee of a governmental unit if the employee shows that the suit was based on conduct within the general scope of his or her employment and that the suit "could have been brought under [the Tort Claims Act] against the governmental unit." *Id.* § 101.106(f). On appeal, Reedy argues by two issues that (1) she proved the suit was based on conduct within the scope of her employment with a hospital, for which the hospital could have been liable, and she was not required to prove that sovereign immunity would be waived in a suit against her employer; and (2) if she was required to prove a waiver of sovereign immunity, she did so. For the reasons that follow, we disagree and affirm the trial court's order denying Reedy's motion to dismiss.

## I. BACKGROUND

The Pompas brought healthcare liability claims against Timothy Spradlin, M.D. and Reedy on May 30, 2008, and concurrently filed the expert report and a curriculum vitae of John Spurlock, M.D. The original petition alleged that on February 1, 2004, Elizabeth

---

[1] Although section 51.014(a)(5) provides for an appeal of an order denying a motion for summary judgment, most courts of appeals have allowed an interlocutory appeal from rulings on other types of motions raising immunity issues, such as motions to dismiss. *See Leonard v. Glenn,* 293 S.W.3d 669, 681 n.11 (Tex. App.–San Antonio 2009, pet. filed); *Escalante v. Rowan*, 251 S.W.3d 720, 727 (Tex. App.–Houston [14th Dist.] 2008, pet. filed); *Lanphier v. Avis*, 244 S.W.3d 596, 598-99 (Tex. App.–Texarkana 2008, pet. dism'd); *Kanlic v. Meyer*, 230 S.W.3d 889, 892 (Tex. App.–El Paso 2007, pet. denied); *see also Poland v. Willerson*, No. 01-07-00198-CV, 2008 WL 660334, at *7 (Tex. App.–Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op.); *Karnes County v. Thomas*, No. 04-06-00613-CV, 2007 WL 2261694, at *3 (Tex. App.–San Antonio Aug. 8, 2007, no pet.) (mem. op.). The Dallas Court of Appeals, however, has held that only rulings on motions for summary judgment may be appealed under section 51.014(a)(5). *See Hudak v. Campbell*, 232 S.W.3d 930, 931 (Tex. App.–Dallas 2007, no pet.). We agree with the majority of courts that hold that section 51.014(a)(5) allows an interlocutory appeal from an order denying a motion to dismiss based on immunity. *See Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 349 (Tex. 2004) (interpreting section 510.04(a)(8) and concluding that "[t]he reference to 'plea to the jurisdiction' is not to a particular procedural vehicle but to the substance of the issue raised. Thus, an interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment.")*.

2

Pompa was a maternity patient at Cuero Community Hospital, where she gave birth to her daughter Annica Pompa. Annica was delivered by Spradlin and Reedy.

The petition alleges that Spradlin and Reedy "failed to exercise ordinary care as required by law in the medical care and treatment of" Elizabeth before, during, and after Annica's birth. Specifically, the Pompas alleged that during delivery, Annica suffered from shoulder dystocia and that Reedy "negligently utilized fundal pressure during the shoulder dystocia," causing a permanent left "brachial plexus injury" requiring extensive medical and rehabilitative expenses in the past and in the future.

Spurlock's expert report provides the factual detail for the claims. It states that Elizabeth was admitted to the hospital at thirty-eight weeks' gestation and that Pitocin, a drug, was administered. After approximately eight hours of labor, Elizabeth began pushing to deliver Annica. Spradlin's delivery notes show that when Annica's head became visible, a "turtle sign" was noted, which is where the baby's head retracts back into the birth canal, indicating a shoulder dystocia. Spurlock explains that a shoulder dystocia occurs when "the baby's shoulder gets stuck behind the mother's pubic bone after the head has been delivered." Spradlin attempted a few maneuvers to dislodge the shoulder, including the "McRoberts maneuver"[2] and "suprapubic pressure."[3]

According to Spurlock, Reedy's notes indicate that she applied "fundal pressure," along with assisting Spradlin's attempt of the McRoberts maneuver, while Annica's shoulder was still impacted against Elizabeth's pubic bone. Fundal pressure is, Spurlock

---

[2] Spurlock's report explains that the "McRoberts maneuver" is the "flexing of the patient's hips" that "allows a sharp ventral rotation of both maternal hips and brings the pelvic inlet and outlet into a more vertical alignment allowing rotation of the [baby's] shoulders and facilitating the delivery of the shoulders."

[3] Spurlock also explained that "suprapubic pressure, alone or with the McRoberts maneuver, places pressure on the area of the pubic bone and pushes the impacted shoulder under the pubic bone thereby delivering the impacted shoulder."

explains, "the application of force with the hands on the fundus [upper abdomen] of the mother to push the fetus down the birth canal in an effort to accomplish delivery."

After birth, Spradlin and Reedy noticed that Annica was not moving her left arm and that there was minimal movement of her left fingers. Spradlin immediately diagnosed Annica as having left "Erb's Palsy," which is "paralysis of the left arm, wrist, and hand due to injury to the brachial plexus nerves."

Spurlock opined that Reedy violated the standard of care for a nurse by applying fundal pressure while the baby suffered shoulder dystocia:

> Once a shoulder dystocia occurs, the nurses should not apply fundal pressure. The inappropriate use of fundal pressure by the nurse during a shoulder dystocia and the force involved in such a maneuver causes the shoulder to be further impacted against the mother's pubic bone. This greater impaction actually stretches the brachial plexus nerves as the shoulder has nowhere to go. This fundal pressure risks stretching, tearing or avulsing the nerves which come from the spinal cord and causing impaired function of the arm, shoulder and hand as occurred in this case. The medical literature also associates more brachial plexus nerve injuries with the use of fundal pressure during shoulder dystocia. Given that Baby Pompa experienced a severe shoulder dystocia during delivery with several maneuvers used to deliver the baby along with simultaneous inappropriate use of fundal pressure, more likely than not, in reasonable medical probability, the use of fundal pressure during the shoulder dystocia caused the baby's brachial plexus injuries as noted above.

On July 3, 2008, Reedy filed a plea to the jurisdiction arguing that the trial court lacked jurisdiction because Reedy was entitled to sovereign immunity under the Texas Tort Claims Act. *See id.* §§ 101.001-101.109 (Vernon 2005 & Supp. 2009). Specifically, she argued that the Pompas' petition failed to allege the use or condition of tangible personal property as required by section 101.021. *See id.* § 101.021 (Vernon 2005). Reedy also filed an answer containing a general denial and an affirmative defense, in which she asserted that she was an employee of Cuero Community Hospital, a governmental unit that retained its sovereign immunity from suit.

4

On August 29, 2008, Reedy filed a motion to dismiss, arguing that because she was an employee of a governmental unit, the suit against her should be dismissed under Texas Civil Practice and Remedies code section 101.106(f). *Id.* § 101.106(f). That provision states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment, and it could have been brought under this Chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the motion is filed.

*Id.*

In this motion, Reedy argued that she was entitled to a dismissal of the claims against her because she was an employee of a governmental unit, acting in the general scope of her employment, and the suit could have been brought against her employer. Reedy argued that she did not have to prove that a waiver of sovereign immunity existed to obtain dismissal; rather, she argued that she only had to prove that the governmental unit could theoretically be liable for her conduct as her employer under agency theories.

In the alternative, however, Reedy argued that the Pompas "could have argued" that sovereign immunity was waived and sued her employer under the Tort Claims Act. Reedy argued that nurses and physicians necessarily rely on medical equipment during the course of a delivery. Reedy argued that she did not apply fundal pressure as alleged by the Pompas, and even if she did, she did not use merely her hands during the shoulder dystocia. Rather, she relied upon and used various medical equipment.

The motion to dismiss attached an affidavit from Reedy. In it, she stated that she was a salaried employee at the hospital, and that she cared for Elizabeth while she was

5

a patient at the hospital. She then stated that "[a]ny birthing maneuvers applied during the course of Annica Pompa's birth were done with the assistance of reading and interpreting the fetal monitoring strip and other medical equipment, as well as positioning the hospital bed to allow for proper application of the maneuvers."

The Pompas filed a response to the motion to dismiss, arguing that Reedy was, in fact, required to prove that sovereign immunity was waived as to her employer before she could obtain a dismissal under section 101.106(f). The trial court held a hearing on October 1, 2008, and it denied the motion the same day. This interlocutory appeal followed.

## II. INTERPRETATION OF SECTION 101.106(F)

Reedy argues in her first issue that the trial court erroneously interpreted section 101.106(f) to require her to prove that sovereign immunity under the Tort Claims Act would be waived if the Pompas filed suit against her employer, a governmental unit. *See id.* We disagree.

We review questions of statutory interpretation de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655-56 (Tex. 1989). When construing a statute, we must determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we ascertain the legislature's intent from the language used in the statute. *Id.* If the statutory language is unambiguous, we adopt the interpretation supported by the statute's plain meaning. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997).

The parties dispute the meaning of the phrase "if [the suit] could have been brought under this Chapter against the governmental unit . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). Most courts interpreting section 101.106(f)'s language have held that, in

6

order to prove that suit "could have been brought under this Chapter" against a governmental entity, the employee-defendant must prove that the plaintiff's claims satisfied section 101.021's requirements to obtain a limited waiver of sovereign immunity from suit and from liability. *Id.* § 101.021;[4] *see Lanphier v. Avis*, 244 S.W.3d 596, 600 (Tex. App.–Texarkana 2008, pet. dism'd); *Hall v. Provost,* 232 S.W.3d 926, 928 (Tex. App.–Dallas 2007, no pet.); *Kanlic v. Meyer*, 230 S.W.3d 889, 893-94 (Tex. App.–El Paso 2007, pet. denied); *Clark v. Sell ex rel. Sell,* 228 S.W.3d 873, 874-75 (Tex. App.–Amarillo 2007, pet. filed); *Franka v. Velasquez*, 216 S.W.3d 409, 413 (Tex. App.–San Antonio 2006, pet. granted); *Tejada v. Rowe,* 207 S.W.3d 920, 925 (Tex. App.–Beaumont 2006, pet. filed); *Phillips v. Dafonte*, 187 S.W.3d 669, 675 (Tex. App.–Houston [14th Dist.] 2006, no pet.). In this case, that would require Reedy to show that Annica's personal injury was "caused by a condition or use of tangible or real property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

Reedy conceded below that the case law is contrary to her position. However, she argued that the Texas Supreme Court's recent decision in *Mission Independent School*

---

[4] Section 101.021 provides:

A governmental unit in the state is liable for:

(1)     property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A)     the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B)     the employee would be personally liable to the claimant according to Texas law; and

(2)     personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(b).

7

*District v. Garcia* mandates a different result. *See* 253 S.W.3d 653, 655-57 (Tex. 2008).

In that case, the Texas Supreme Court interpreted section 101.106(e), which provides:

> (e)    If a suit is filed *under this chapter* against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (emphasis added). Garcia sued both

Mission Independent School District and its employee, alleging claims against the school

district under the Texas Commission on Human Rights Act and for intentional infliction of

emotional distress. *Garcia*, 253 S.W.3d at 655. The school district moved to dismiss

under section 101.106; the trial court denied the motion, and we affirmed. *Id.* On appeal

to the Texas Supreme Court, Garcia argued that the trial court properly denied the motion

to dismiss because her claims were not filed "under this chapter," i.e., under the Texas Tort

Claims Act, reasoning that the discrimination claims were governed by a separate statute

and the tort claim was excluded from the Tort Claims Act because it was an intentional tort.

*Id*. at 658. The supreme court held that Garcia's tort claims were not excluded from

section 101.106(e)'s application:

> The court of appeals reasoned that none of Garcia's claims were brought "under this chapter" because they did not fit within the Tort Claims Act's waiver, and therefore section 101.106(e) did not apply. However, we have never interpreted "under this chapter" to only encompass tort claims for which the Tort Claims Act waives immunity. To the contrary, in *Newman v. Obersteller*, 960 S.W.2d 621, 622-23 (Tex. 1997), we held that former section 101.106's limiting phrase "under this chapter" operated to bar an intentional tort claim against an employee after a final judgment on a claim involving the same subject matter had been rendered against the governmental unit, even though the Act by its terms expressly excluded intentional torts from the scope of the Act's immunity waiver. Although these cases construed the prior version of section 101.106, there is nothing in the amended version that would indicate a narrower application of the phrase "under this chapter" was intended. Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or

together with its employees, are assumed to be "under [the Tort Claims Act]" for purposes of section 101.106.

*Id.* at 658-59 (citations omitted). The First Court of Appeals, which originally construed section 101.106(f) to require the employee to prove a waiver of immunity, has now applied the supreme court's language in *Garcia* to eliminate that requirement. *Compare Williams v. Nealon,* 199 S.W.3d 462, 466 (Tex. App.–Houston [1st Dist.] 2006, pet. filed) (requiring proof of a waiver), *with Keleman v. Elliott*, 260 S.W.3d 518, 524 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (holding that section 101.106(f) applied to intentional torts, even though these are excluded from the Tort Claims Act's coverage); *cf. Castro v. McNabb*, No. 08-07-00074-CV, 2009 WL 3462982, at *7 (Tex. App.–El Paso Oct. 29, 2009, no pet.) (holding that *Garcia* applies to section 101.106(f) but holding that a declaratory judgment action is not brought under the Texas Tort Claims Act).

What Reedy and the First Court of Appeals do not address in their analysis, however, is that the *Garcia* court also expressly noted that it was *not* construing section 101.106(f), which contains different language:

> Section 101.106(f) contains a slightly different phrase. It states that the suit against the employee is to be dismissed when the suit "could have been brought under this chapter against the governmental unit." The interpretation of section 101.106(f) is not before us here and neither party argues that it applies to this case.

*Garcia*, 253 S.W.3d at 660 n.5. Specifically, the phrase "could have been brought" modifies the phrase "under this chapter." *Id.* We conclude the phrase "could have been brought" unambiguously invokes the Tort Claims Act's limited waiver of immunity from suit and liability, and the Texas Supreme Court did not intend to undo the scores of opinions holding otherwise. *See id.*; *see also Lieberman v. Romero*, No. 05-08-01636-CV, 2009 WL

9

3595128, at *2 (Tex. App.–Dallas Nov. 3, 2009, no pet. h.) (memo. op.) (rejecting argument that *Garcia* eliminated the requirement to show that the plaintiff's claims fall within a waiver of immunity). Accordingly, we hold that Reedy was required to show that the Pompas' suit invoked a waiver of immunity from suit and liability under the Tort Claims Act in order to prevail on her motion to dismiss under section 101.106(f), and we overrule her first issue.

### III. REEDY'S PROOF UNDER SECTION 101.106(F)

In the alternative, by her second issue, Reedy argues that she demonstrated that she was employed by a governmental unit and acted within the general scope of her duties and that suit could have been brought against her employer because the Pompas' suit involves the use of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). It is undisputed that Reedy was employed by Cuero Community Hospital, which is a governmental unit, and that she was acting within the scope of her employment at the time she provided care to Elizabeth and Annica. Thus, the only issue is whether she established a waiver of immunity through the use of tangible personal property. We hold she did not.

"As the movant on the motion to dismiss, it is [Reedy's] burden to point to the facts evidencing that [the Pompas'] suit could have been brought against [the hospital]." *Sheth v. Dearen,* 225 S.W.3d 828, 830 (Tex. App.–Houston [14 Dist.], 2007, no pet.) (citing *Phillips,* 187 S.W.3d at 677; *Tejada,* 207 S.W.3d at 923). A movant will typically rely on the plaintiff's pleadings to show a waiver of immunity, but "other evidence is proper if relevant to the issue of waiver of sovereign immunity." *Id.* (citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) ("We must examine the plaintiff's pleadings and, to the extent relevant to the jurisdictional issue, the evidence

10

submitted by the parties in order to determine if the government waived sovereign immunity."")); *see also Franka*, 216 S.W.3d at 412; *Tejada*, 207 S.W.3d at 922-23; *Phillips*, 187 S.W.3d at 676-77. When looking at the plaintiff's pleadings to determine if the facts alleged support a waiver of sovereign immunity, "we look at the substance of the plaintiff's pleadings rather than his characterizations of them." *Sheth,* 225 S.W.3d at 830 (citing *Phillips*, 187 S.W.3d at 676-77). "Where the facts taken from the plaintiff's pleadings are undisputed, the question of whether those pleadings support a jurisdictional finding of waiver of sovereign immunity is one of law and is thus reviewed de novo." *Id.* at 831 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Reedy argues that the Pompas' pleadings, Spurlock's expert report, and her own evidence demonstrate the use of tangible personal property in two respects: (1) Spurlock's report notes that the drug Pitocin was administered to Elizabeth during delivery; and (2) Reedy alleged in her motion and testified in her affidavit that she relied on medical devices, fetal monitor strips, and other medical equipment during the shoulder dystocia. Reedy, however, does not point to any allegation in the Pompas' petition or any evidence that the administration of Pitocin or the use or misuse of medical devices, fetal monitor strips, and other medical equipment *caused* the injuries that Annica suffered.

To demonstrate a waiver of immunity, a plaintiff may not merely plead that tangible personal property was involved in the events giving rise to the claim—rather, the plaintiff must plead a causal nexus between the tangible personal property and the injury. *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). For example, in *Franka v. Velasquez*, the San Antonio Court of Appeals addressed a shoulder dystocia case very similar to this case. *See* 216 S.W.3d at 410-11. In that case,

11

the plaintiff's expert report noted that the doctors used a vacuum extractor during delivery; thus, the doctors moved to dismiss under section 101.106(f) arguing that suit could have been brought against their governmental entity employer because a vacuum extractor constituted tangible personal property. *Id.* at 411. The court of appeals disagreed, holding that there was no evidence that the vacuum extractor caused the shoulder injuries. *Id.* at 412-13.

The same is true here. There is nothing in the record to indicate that the use of any tangible personal property caused Annica's brachial plexus injury. Although Reedy alleges that she performed birthing maneuvers "with the assistance of reading and interpreting the fetal monitor strip and other medical equipment, as well as positioning the hospital bed to allow for proper application of the maneuver(s)," she does not point to anything in the Pompas' pleadings or point to any evidence that the equipment contributed to Annica's injury in any way. Moreover, Spurlock's expert report does not indicate that the use of Pitocin or any other piece of tangible personal property caused Annica's injury—rather, he unequivocally states that Reedy's application of fundal pressure caused Annica's injury. Thus, there is no allegation or evidence that would support a finding that suit could have been brought against Reedy's employer, and we overrule her second issue. *See id.*

## IV. CONCLUSION

Having overruled both of Reedy's issues, we affirm the trial court's order denying Reedy's motion to dismiss.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
18th day of March, 2010.